462 So.2d 803 (1984)
Joseph J. NODAR, Petitioner,
v.
Patricia GALBREATH, Respondent.
No. 63724.
Supreme Court of Florida.
December 13, 1984.
Rehearing Denied February 26, 1985.
*805 James Cary Jacobson, Scott Richard Gill and Michael Eliot Rehr of Jacobson & Gottlieb, Hollywood, for petitioner.
Ronald P. Gossett of Hodges, Gossett, McDonald, Gossett & Crawford, Hollywood, for respondent.
Talbot D'Alemberte, L. Martin Reeder, Jr. and Thomas R. Julin of Steel, Hector & Davis, and Richard J. Ovelmen, Gen. Counsel, Miami, amicus curiae, for The Miami Herald Pub. Co.
George Rahdert of Rahdert, Anderson & Richardson, St. Petersburg, amicus curiae, for Times Pub. Co.
BOYD, Chief Justice.
This cause is before the Court on petition for review of the decision of the district court of appeal in Nodar v. Galbreath, 429 So.2d 715 (Fla. 4th DCA 1983). The district court affirmed a judgment for compensatory and punitive damages for the tort of defamation. The district court's decision conflicts with past decisions of this Court. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We hold that the statements found to be defamatory by the jury were conditionally privileged under Florida law and that the plaintiff failed to prove express malice. We therefore quash the district court decision and order reversal of the judgment.
The complaint alleged that defendant/petitioner Joseph J. Nodar committed a slander of the plaintiff/respondent Patricia Galbreath by making certain remarks, heard by others, impugning her professional ability. The plaintiff is a public high school teacher. Prior to and at the time of the communication charged as defamatory, the son of the defendant was a student in a class taught by the plaintiff. The class was a special tenth-grade English class for gifted students. The publication alleged as having been defamatory was made at a meeting of the governing board of the Broward County school district, specifically a portion of the school board meeting specially set aside for receiving the comments of members of the public. Attached to the complaint was a transcript of petitioner's statement to the school board, the most pertinent parts of which are set out in the footnote.[1]
The record shows that the defendant was dissatisfied with the instruction his son was receiving in the class and believed that it was not in accord with the established curriculum for the tenth-grade gifted English class. The theory of the complaint was that the publication was a false and defamatory statement tending to impugn plaintiff's abilities in connection with her business or profession and thus was slander per se. A second count alleged that the statements were made with express malice *806 and sought punitive damages. The jury found the remarks defamatory and maliciously made and returned verdicts for $5,000 compensatory damages and $5,000 punitive damages.
By motion to dismiss and by answer to the complaint the defense raised issues of qualified privilege, the lack of sufficient allegations of malice, the so-called "constitutional privilege" relating to public officials, public figures, and public concerns, and the lack of defamatory meaning in the communication. Another issue which was argued by the parties at trial was whether the statements made by the defendant at the school board meeting were statements of fact or expressions of opinion. Through special verdict interrogatories the trial court submitted to the jury the questions of (1) whether the statements were fact or opinion; (2) whether the defendant had a qualified privilege; and (3) whether he abused or lost the privilege due to express malice. The jury found that the statements were matters of fact, that the defendant when he spoke had a qualified privilege, but that he exceeded the bounds of the privilege because of his malice toward the teacher.
On appeal the district court affirmed. The court held that (1) it was not necessary to decide whether plaintiff was a public official for purposes of the "constitutional privilege" of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), because defendant as a parent addressing a school board on behalf of his son had a qualified privilege and received the benefit of that privilege at trial  the court reasoned that regardless of whether the "constitutional privilege" or the common-law qualified privilege applied, the plaintiff in order to recover would in either case have to prove malice  (2) that the trial court was wrong to submit to the jury the question of whether the defendant's statements were assertions of fact or expressions of opinion, but found the error obviated since the jury found them to be assertions of fact, the correct determination in the district court's view; (3) that there was no reason to disturb the jury's determination not only that the defendant made defamatory statements, but that he made them maliciously so as to forfeit the privilege attaching to the occasion of his remarks.
Petitioner does not argue to this Court that his statements were non-defamatory as a matter of law. Petitioner first argues that the trial court should have held respondent to be a "public official" under New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and thus should have dismissed the lawsuit or granted summary judgment or a directed verdict on the ground of the failure of the plaintiff to plead or prove that the defendant made the statements knowing them to be false or with reckless disregard of whether or not they were true. As was stated above, the district court of appeal found that there was no need to decide whether the trial court had erred in not declaring the plaintiff to be a public official because the plaintiff had to prove "malice" in either case.
Petitioner correctly points out that the district court failed to recognize that the "actual malice" necessary to overcome the "constitutional privilege" of New York Times Co. v. Sullivan is different from the express malice necessary to avoid the common-law qualified privilege. The elements of "actual malice," and the standard of proof, differ from those of express malice. "Actual malice," which under federal constitutional law must be shown before a public official or public figure may recover for defamation relating to a matter of his official conduct or of public concern, consists of knowledge of falsity or reckless disregard of truth or falsity, and must be shown by clear and convincing evidence. Express malice under the common law of Florida, necessary to overcome the common-law qualified privilege, is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff. See Loeb v. Geronemus, 66 So.2d 241 (Fla. 1953); Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887). The *807 plaintiff need only show this fact by a preponderance of the evidence, the ordinary standard of proof in civil cases. Thus the district court erred in concluding that the trial court's ruling on the "public official" question made no difference to the defendant's claim of privilege.
Petitioner argues that respondent is a public official and that the case is governed by the "actual malice" standard of New York Times Co. v. Sullivan.[2] Where this defense is raised in a defamation case, the judicial characterization of the plaintiff as a public official or public figure has far-reaching consequences. The New York Times rule places a very heavy burden of proof upon the public official or public figure who seeks redress for defamation from one who criticizes or discusses the official or public conduct of the plaintiff. In New York Times the Court held that "constitutional guarantees require ... a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice'  that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-80, 84 S.Ct. at 725-26. It has been said of the New York Times rule: "What the New York Times rule ultimately protects is defamatory falsehood. No matter how gross the untruth, the New York Times rule deprives a defamed public official of any hope for legal redress without proof that the lie was a knowing one, or uttered in reckless disregard of the truth." Rosenblatt v. Baer, 383 U.S. 75, 92, 86 S.Ct. 669, 679, 15 L.Ed.2d 597 (1966) (Stewart, J., concurring).
In Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court rejected the argument that the New York Times rule must apply not only to public officials and public figures but also to private persons defamed in the course of media publications or broadcasts reporting or commenting on or discussing matters of public interest. The Court observed that the purpose of the New York Times rule was to remedy the chilling effect which the common-law rule of strict liability for libel and slander might have on the uninhibited vigor of a free press. The Court then noted: "And it exacts a correspondingly high price from the victims of defamatory falsehood. Plainly many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier of the New York Times test." 418 U.S. at 342, 94 S.Ct. at 3008.
In Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the Court discussed the meaning of "public official" for purposes of the New York Times constitutional privilege as follows:
The motivating force for the decision in New York Times was twofold. We expressed "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that [such debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S., at 270 [84 S.Ct., at 720] (Emphasis supplied.) There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."
*808 383 U.S. at 85, 86 S.Ct. at 675-76 (footnote omitted). The Court added that New York Times standards apply "[w]here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees," 383 U.S. at 86, and that it is the position itself that must invite public scrutiny, "entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." 383 U.S. at 87 n. 13.
Guided by these principles, we cannot conclude that one who accepts a position as a teacher in a public high school thereby effects the same kind of surrender of the right to vindicate defamation as does one who seeks or accepts an elected or policymaking position with a public body or government institution. It should be remembered that the public official and public figure categories both serve the same purpose of preserving a free press. The plaintiff in Gertz v. Robert Welch, Inc. was a widely known lawyer criticized for his conduct of a somewhat well publicized court case and was held to be a private person. The parties have cited numerous cases, decided by courts in Florida and in other jurisdictions, dealing with questions of whether specific public officers and employees are to be deemed "public officials" under New York Times. Petitioner has not cited any binding authority for the proposition that the plaintiff here was a public official.[3] It is enough to say that we decline to so characterize a public high school English teacher.
Because plaintiff was not a public official, New York Times does not apply. However, there are constitutional limits on defamation recovery even when the plaintiff is neither a public official nor a public figure. Gertz v. Robert Welch, Inc. Respondent argues that these limitations under Gertz protect only those defamation defendants who are associated with the organized communications media. It is true that looking strictly at the facts of the case, Gertz appears to be limited to the situation of the organized or institutional media defendant. We believe, however, that the constitutionally protected right to discuss, comment upon, criticize, and debate, indeed, the freedom to speak on any and all matters is extended not only to the organized media but to all persons. If common-law remedies for defamation are to be constitutionally restricted in actions against media defendants, they should also be restricted in actions against private, non-media speakers and publishers.
In Gertz v. Robert Welch, Inc., the Court held that the states are free to establish their own standards of responsibility of news media defendants to defamed private persons, so long as they neither impose liability without fault nor award presumed damages in the absence of actual malice. This Court, in a case involving a libel suit against a newspaper, has recently held that a private plaintiff seeking recovery based on a false and defamatory news story need not prove "actual malice" but must establish negligence. Miami Herald Publishing Co. v. Ane, 458 So.2d 239 (Fla. 1984). We need not reach the question of how the negligence standard applies in this case  the question was not raised below and has not been briefed  because we find that the case is properly decided under Florida common-law principles of qualified privilege.
*809 Petitioner argues that his remarks were privileged as a matter of law. We find that there are several legal grounds for holding that the defendant's remarks were made upon a conditionally privileged occasion.
"One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused." Restatement (Second) of Torts § 593 (1976). The law of Florida embraces a broad range of the privileged occasions that have come to be recognized under the common law. See Rahdert & Snyder, Rediscovering Florida's Common Law Defenses to Libel and Slander, 11 Stetson L.Rev. 1 (1981). "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." 19 Fla.Jur.2d Defamation and Privacy § 58 (1980). See Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906).[4]
This general rule of privilege finds expression in several established common-law legal grounds for holding that the defendant's statements to the school board were protected by a qualified privilege. The remarks of the defendant, addressed in person to a school board at a school board meeting concerning the curriculum and instruction in an English class at a public high school in which his son was enrolled and his son's difficulties with the class clearly came within the scope of the privilege based on mutuality of interest of speaker and listener. See Johnson v. Langley, 247 Ky. 387, 57 S.W.2d 21 (1933). The concern of a parent for the welfare of his child provides a privilege for the occasion of speaking to one having the power or duty to take action for the benefit of the child. Restatement (Second) of Torts, § 597 (1976).
Another ground for holding that the statement was conditionally privileged would be that the statement was made for the protection of the recipient's interest in receiving information on the performance of its employee. See Restatement (Second) of Torts § 595 (1976). In this connection, the value of the defendant's defamatory information to the school board in overseeing the operation of the public schools must be weighed against the extent of the harm likely to be done to the plaintiff's reputation as a result of the communication. L. Eldredge, The Law of Defamation § 86 at 461 (1978). Under the American Law Institute's approach, the interest of the school board in the performance of a teacher, its employee, would give rise to a privilege in another to provide information concerning that performance even without a legal duty or a family relationship and even though the information is not requested but merely volunteered, if the publication is "within the generally accepted standards of decent conduct." Restatement (Second) of Torts § 595 (1976). Under the common law of Florida, a communication to an employer regarding his employee's performance is conditionally privileged, and the mode, manner, or purpose of the communication would go to the question of abuse or forfeiture of the privilege. Analogous situations include communications for bona fide commercial purposes where the interest to be protected is the recipient's. See, e.g., Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942); Putnal v. Inman, 76 Fla. 553, 80 *810 So. 316 (1918); Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897); Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887).
Another recognized legal ground for holding that the defendant's statements were privileged is that they were the statements of a citizen to a political authority regarding matters of public concern, i.e., the school curriculum and the performance of a public employee. Coogler v. Rhodes; Moody v. Crist, 287 So.2d 412 (Fla. 2d DCA 1973).[5] All of these grounds of qualified privilege have existed in the law of Florida for many generations and have served to provide broad protection for freedom of speech and of the press long before the creation of the remedy fashioned in New York Times v. Sullivan.
Where the circumstances surrounding a defamatory communication are undisputed, or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the court. Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906). Here the circumstances and content of the statement were clear and undisputed. Therefore the defendant's statements to the school board were qualifiedly privileged as a matter of law and the trial judge erred in submitting the question of privilege to the jury. The trial court should have instructed the jury that the statements were made on a privileged occasion.
The legal conclusion that the defendant's remarks were privileged brings us to the question of express malice. If the statements were made without express malice  that is, if they were made for a proper purpose in light of the interests sought to be protected by legal recognition of the privilege  then there can be no recovery. The determination that a defendant's statements are qualifiedly privileged eliminates the presumption of malice attaching to defamatory statements by law. The privilege instead raises a presumption of good faith and places upon the plaintiff the burden of proving express malice  that is, malice in fact as defined by the common-law doctrine of qualified privilege.
In cases of qualifiedly privileged publications the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail; the burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue.
Coogler v. Rhodes, 38 Fla. at 249, 21 So. at 112.
As has already been stated, the jury found that the petitioner's statements were made with malice so that the privilege was lost and the defendant liable for defamation. Petitioner argues that under the evidence his statements were non-malicious expressions of opinion as a matter of law,[6] *811 that the trial court erred in improperly excluding evidence relevant to the issue of malice, and that the jury was improperly instructed on the issue of malice. Petitioner is correct in all three arguments. Because we find that the evidence of express malice was legally insufficient to overcome the qualified privilege, we need not address the trial errors which would otherwise entitle petitioner to a new trial.[7]
The evidence was insufficient to show express malice and there should have been a directed verdict on this ground. There was some confusion below about the concept of express malice, the trial court giving the jury the definition from Montgomery v. Knox: "ill will, hostility, evil intention to defame and injure."[8] Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position "to gratify his malevolence." Myers v. Hodges, 53 Fla. 197, 213, 44 So. 357, 362 (1907). See also Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). If the occasion of the communication is privileged because of *812 a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff. Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 149 A.2d 193 (1959); Restatement (Second) of Torts §§ 599, 603 (comment a) (1976). The incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege. See Boston Mutual Life Insurance Co. v. Varone, 303 F.2d 155 (1st Cir.1962); Fahr v. Hayes, 50 N.J.L. 275, 13 A. 261 (1888); Craig v. Wright, 182 Okla. 68, 76 P.2d 248 (1938).
The plaintiff's proof of malice consisted of the tone of the defamatory words themselves and the behavior of the defendant over a period of several months before he made his remarks at the school board meeting. Plaintiff's counsel at trial relied upon evidence of defendant's repeated complaints about his son's teacher and argued that they demonstrated "harassment" of the teacher and hostility towards her.
The words themselves, we believe, are not so extreme as to demonstrate express malice. Petitioner merely said that the teacher had harassed and verbally abused his son, that she was unqualified to teach the course, and that her performance as a teacher was victimizing his son. While we must accept the unchallenged conclusion of the jury that these words were defamatory, the words do not inherently demonstrate express malice. The accusation that the teacher gave the student a poor mark in retaliation for the father's complaints about her teaching, while clearly capable of stating defamatory meaning, does not show express malice. Examples of cases where the false and defamatory words themselves were so extreme as to intrinsically show express malice are Loeb v. Geronemus, 66 So.2d 241 (Fla. 1953) (defendants said plaintiff was guilty of evil conduct, was of low moral character, was a disgrace, a troublemaker, was not respectable, had been compelled to leave Chicago) and Brown v. Fawcett Publications, Inc., 196 So.2d 465 (Fla. 2d DCA 1967) (defendant said plaintiff was a murderer, rapist, and sodomite).
The fact that the defendant's remarks to the school board were preceded by many months of personal conversations, telephone calls, and letters to the teacher and her superiors does not demonstrate express malice. Indeed, it seems to us that this evidence tends to support rather than negate the claim of privilege, as it shows that defendant tried to seek redress of his grievances through private communications before he publicly revealed his complaints at the school board meeting. The series of personal visits, telephone calls, and letters, far from exhibiting a pattern of malicious harassment, demonstrates a degree of parental concern for the effectiveness of public schools which our state, through its courts of law, should attempt to encourage rather than discourage.
We therefore hold that the plaintiff's evidence was insufficient as a matter of law to carry the burden of proving express malice. We are not substituting our judgment for that of the jury; the evidence was legally insufficient and the jury was misled by inadequate instructions and an improper exclusion of relevant testimony.
For the foregoing reasons, we quash the decision of the district court of appeal and remand with directions that the judgment be reversed and a directed verdict be entered for the petitioner/defendant.
It is so ordered.
ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS and OVERTON, JJ., dissent.
NOTES
[1] Although the entire statement provides a context which is important to an understanding of the statements, in the interest of brevity we provide only the portions said to be defamatory. These excerpts are but a small fraction of the entire statement:

We expressed our concerns about the curriculum of the English class, the gifted English class, explained to them what was going on in the way of an education for these children, including my son, the harassment my son has been receiving from this particular teacher, because of our investigation or inquiry as to his grades and why his grades are going down. He has been harassed since then, he has been abused by her verbally, and his grades have been dropping... . My son is being victimized by these two teachers... . Now, there is a lot of money funded for this program and, for example, my son, we pay for his books that he has to bring into class to read, we pay for his pencils, we pay for his paper, and the only thing he gets is an unqualified teacher, that's all he's got, and that's all the rest of the children in that class have  an unqualified teacher... .
[2] We recently declined to hold that a defamation plaintiff who is neither a public official nor a public figure should be required to prove "actual malice" under New York Times in order to recover. Miami Herald Publishing Co. v. Ane, 458 So.2d 239 (Fla. 1984).
[3] Petitioner relies on Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976). The fact that the plaintiff there was the elected Superintendent of Public Instruction for Palm Beach County School District illustrates the distinction we draw. Petitioner also cites the pre-New York Times decision in White v. Fletcher, 90 So.2d 129 (Fla. 1956). There a local civil service board member criticized a police officer and the remarks were held qualifiedly privileged, which has different consequences from the "constitutional privilege" of New York Times. we recently held that a police officer is a public official for purposes of the New York Times constitutional privilege. Smith v. Russell, 456 So.2d 462 (Fla. 1984). However, nothing in the reasoning underlying that decision compels the conclusion that a public school teacher is a public official.
[4] communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.
Abraham v. Baldwin, 52 Fla. at 155, 42 So. at 592.
[5] Yet another arguable ground would be the privilege of every person to express to other persons his fair comment and criticism on any public, governmental, political, social, or cultural matters. Gibson v. Maloney, 231 So.2d 823 (Fla. 1970). White v. Fletcher, 90 So.2d 129 (Fla. 1956); Abram v. Odham, 89 So.2d 334 (Fla. 1956); McClellan v. L'Engle, 74 Fla. 581, 77 So. 270 (1917). Although we recently said that there is no qualified privilege "to defame a private person merely because the defamatory communication is directed to a matter of public or general concern," Miami Herald Publishing Co. v. Ane, at 241, we acknowledged that past cases had recognized the privilege of fair comment where there were "additional factors." We need not decide whether this case presents such additional factors because there are numerous other grounds of privilege.
[6] Upon submission to the jury of the question of whether the statements were assertions of fact or expressions of opinion, the jury found them to be statements of fact. The district court said this question should have been decided by the court as a matter of law but found the error harmless because the jury's determination, in its view, was correct. Under any plain, reasonable understanding of the terms "fact" and "opinion," it is clear that the defendant's remarks contained both assertions put forth as facts known to the speaker and conclusions drawn or judgments made by the speaker. The only importance of this issue lies in the fact that some authorities hold that the privilege of fair comment does not protect false and defamatory assertions of fact. See, e.g., Miami Herald Publishing Co. v. Ane, 458 So.2d 239 (Fla. 1984). As the discussion in text has already shown, however, there are numerous other grounds of qualified privilege under which mistakes of fact are protected. Petitioner's argument invokes the doctrine of qualified privilege in its broad sense, and it is on this ground that we rest our decision.
[7] The evidentiary ruling was the refusal of the court to allow the defendant to testify concerning statements made to him by his son about the plaintiff's performance. The testimony was excluded on the ground of hearsay. To be hearsay, evidence must be "offered in evidence to prove the truth of the matter asserted." § 90.801, Fla. Stat. (1981). Petitioner says the ruling was wrong because his testimony concerning what his son had told him was offered not to prove the truth of the matters contained in his son's statements but merely to establish that his son had indeed told him about the teacher's conduct and the impact of these reports on the defendant's state of mind. Petitioner argues that his state of mind about the teacher's conduct was relevant to the question of whether he had reasonable grounds to believe the statements he subsequently made before the school board. We agree that the exclusion of the testimony as hearsay was error. The question of whether petitioner had reason to believe what he said to the school board was relevant to the question of express malice. Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887). "If that evidence showed the belief to be a reasonable one, such as would have entered the mind of an impartial person weighing it carefully, he was justified in his belief, and the mistake in the belief would not be visited upon him as implying express malice. On the other hand, the unreasonableness of the belief attending admission of falsity, while evidence of malice, would not necessarily show express malice." Id. at 607, 3 So. at 217. Although legal malice is presumed from the publication of defamatory matter, "evidence may be, and should be, received to show a less degree of malice and an absence of wanton intention to injure." Jones, Varnum & Co. v. Townsend's Administratrix, 21 Fla. 431, 442-43 (1885). Where qualified privilege is raised as a defense and the plaintiff attempts to show malice-in-fact, then the absence thereof is of course also an issue on which relevant evidence should be admitted. If the defendant proffers evidence of the extrajudicial words of another as providing the reason for his belief in the matter charged as defamatory, such evidence should not be excluded as hearsay. Id. at 447-48.
[8] The challenged jury instruction defined the concept of express malice as follows:

It is malicious to make a false statement concerning another with ill will, hostility, or evil intention to defame and injure.
Although based on the definition given in Montgomery v. Knox, the instruction added the disjunctive "or" which is not present in Montgomery. 23 Fla. at 606, 3 So. at 217. The addition of the word "or" had the effect of allowing the jury to find express malice upon a showing of any of the three elements given. Although the Montgomery case, even without the "or," is not very enlightening about what constitutes express malice, the pertinent authorities on the subject, discussed in the text of this opinion following this footnote, show that the gravamen of express malice is the abuse of a privileged occasion by improper motives on the part of the speaker. The instruction was inadequate to fully apprise the jury of what would show express malice.