ZEHMER, Judge.
The jury found appellants, Northwest Florida Home Health Agency (Health Agency) and Susan Cope, guilty of malicious prosecution for making a complaint to the Department of Business Regulation (department), Board of Nursing (board), concerning the professional conduct of ap-pellee, Elizabeth A. Merrill, a registered nurse. Judgment was entered against appellants for substantial compensatory and punitive damages. The trial court denied appellants’ post-trial renewal of their motion for directed verdict and their motion for new trial or remittitur. Appellants raise the following issues on appeal: (1) The proceeding below constituted neither a civil nor criminal judicial proceeding that will legally support a malicious prosecution action; (2) Failure to prove the absence of probable cause; (3) Error in excluding evidence of reports received by defendants concerning plaintiff’s misconduct; (4) Failure to prove actual malice; (5) Error in the court’s response to a jury question concerning the meaning of its instructions; and (6) Error in failing to grant a remittitur because the compensatory and punitive damages were excessive and not supported by the evidence. We reverse.
Health Agency is a nonprofit Florida corporation which provides home nursing services to patients residing in northwest Florida. Susan Cope is a registered nurse who serves as nursing supervisor for the agency. Elizabeth A. Merrill, also a registered nurse, began working as an employee of the agency in February 1981. Her duties consisted of visiting five patients per day in her assigned territory to provide nursing services as directed by the patient’s doctor.
Ms. Merrill’s performance of these duties to the satisfaction of her employer was not without some controversy. In August 1981 she received a written reprimand for refusing to answer an emergency call from a patient who lived two miles from her home. Although it was Health Agency’s policy to provide new staff nurses a formal written performance evaluation after six months’ employment, Ms. Merrill’s evaluation due *896 in August was delayed by Ms. Cope until October. On October 9, 1981, just before Ms. Merrill left on vacation, Ms. Cope gave her an evaluation report that rated her “above average.” The evaluation form noted that Ms. Merrill had shown improvement but needed to work on written communications and communications in the office. The latter comment related primarily to the clarity, detail, and accuracy of entries made in patient records maintained by Health Agency. During the evaluation conference Ms. Merrill informed Ms. Cope that she would no longer visit more than three patients per day. A normal case load for Health Agency nurses was five patients per day. Apparently, however, Ms. Cope made no adverse comments in response.
Ms. Cope assumed Ms. Merrill’s patient case load while Merrill was on vacation. Ms. Cope testified that during this period she discovered Ms. Merrill had been providing inadequate treatment, inaccurately charting her work, and falsifying mileage claims. On November 1, 1981, Ms. Merrill returned to work and was immediately terminated by Ms. Cope and the agency. No explanation was given Ms. Merrill at the time, and she filed an unemployment compensation claim. The agency contested the claim on the grounds that Ms. Merrill had been discharged for misconduct. Two hearings were held, and on March 3, 1982, a decision was rendered in Ms. Merrill’s favor.
In July 1980, sometime before Ms. Cope was made a supervisor, Health Agency received a letter from the Department of Professional Regulation advising that, pursuant to chapter 464, Florida Statutes, “a nurse is required by law to report to the Department any nurse who is in violation of the Nurse Practice Act or Rule of the Profession” and further advising how to file complaints in accordance with the department’s practices and regulations. In October 1980 Health Agency received a second letter from the department:
Each health care practice act contains a section that requires licensed professionals to report any person he or she knows to be in violation of a health care practice act or rules to the Department of Professional Regulation. The law also requires the reporting of licensed health professionals who have been disciplined by their employer whether it is a reprimand, loss of privileges or dismissal.
If you or the professionals on your staff encounter such a situation, contact the Department of Professional Regulation at l-(800)-342-7940. A complaint analyst will work with you and insure complete confidentiality.
The Department needs your help to protect the public from harm by incompetent and unprofessional licensees. You will not only be aiding the citizens of Florida but assuring the preservation of high standards in your profession.
Mr. Long, the head of Health Agency, was aware of the information in these letters, but Ms. Cope was not. During late January 1982, Ms. Cope attended a seminar on the legal aspects of nursing. During the seminar she was informed of a nurse’s obligation to report any nurse who was terminated. Thereafter she discussed Ms. Merrill’s case with Mr. Long and, with his knowledge and concurrence, notified the department of Ms. Merrill’s termination because of poor patient care while on home duty, falsifying mileage records, and failing to accurately chart patient care. Ms. Cope and Health Agency cooperated with the department and its investigative staff. Ms. Cope submitted an affidavit identifying the particular areas of poor patient care attributed to Ms. Merrill: (1) Patient Jerni-gan — plug of necrotic tissue not removed; no instruction of patient’s spouse on proper care; inadequate catherization; (2) Patient Rich — no request for medically suitable bed; (3) Patient Newman — not advised of full range of testing services provided by agency; not advised of need for pacemaker; (4) Patient Rost — high blood pressure which was inadequately checked and no notification to physician; (5) Patient Smith — long-term rash not discovered and treated by Ms. Merrill; (6) Patient Jerni-gan — sporadic visits to diabetic patient.
*897 Ms. Merrill was notified by letter dated April 23, 1982, of the department’s investigation. She denied all charges and employed a lawyer to represent her during the course of the investigation. Ms. Merrill disclosed the existence of the investigation to her family and several friends and voluntarily called one prospective employer to advise that she was under investigation. There is no evidence that Ms. Cope, Mr. Long, Health Agency, and the board’s investigators breached the rule of confidentiality applicable to this investigation. At the conclusion of the investigation, Ms. Merrill was advised by letter from the department that the investigation had been terminated by a closing order entered July 30, 1982, because “the case which was filed against you has been dismissed with no probable cause being found to proceed against you further with administrative action.” On October 8, 1982, Ms. Merrill instituted the malicious prosecution action against appellants.
The liability of Health Agency and Ms. Cope is predicated entirely on Ms. Cope’s conduct in reporting information about Ms. Merrill’s professional conduct to the department. As Ms. Cope and Ms. Merrill are registered nurses under the provisions of chapter 464, Florida Statutes (1981), both are bound by its provisions and the rules promulgated thereunder. Section 464.018(1) specifies certain acts that “shall be grounds for disciplinary action,” including:
(f) Unprofessional conduct, which shall include, but not be limited to, any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing nursing practice, in which ease actual injury need not be established.
⅝ ⅝ $ # $ ⅜
(i) Failing to report to the Department any person who the licensee knows is in violation of this chapter or of the rules of the Department or Board.
(j) Willfully or repeatedly violating any provision of this chapter [or] a rule of the Board or the Department....
The rules adopted by the department and the Board of Nursing provide that the department shall be responsible for making the determinations of probable cause for taking disciplinary action. Rule 210-10.04, Florida Administrative Code.[1] Rule 210-10.05(2)(e) defines in more specific language certain acts which will support the imposition of disciplinary sanctions, including:
1. ... unprofessional conduct which shall include ... inaccurate recording, falsifying or altering of patient records; or
* ⅜ * * ⅜
12. Acts of negligence, gross negligence, either by omission or commission; or
13. Failure to conform to the minimal standards of acceptable prevailing nursing practice, regardless of whether or not actual injury to a patient was sustained.
Rule 210-10.05(2)(h) subjects a registered nurse to disciplinary sanctions for failing to inform the department or the board “of any deviation from the prevailing or acceptable standard of nursing practice of another person licensed to practice in this state, or any other violation of chapter 455 or 464, Florida Statutes, or the rules promulgated thereto.”
Pursuant to subsections 455.225(3) and (9), Florida Statutes (1981), all proceedings and records made during an investigation prior to a determination of probable cause to file a formal complaint are exempt from the provisions of sections 286.011 and 119.-07 dealing with public meetings and public inspection of official records. Further, the initial investigative proceedings are confidential until the department determines that probable cause exists or until confidentiality is waived by the person who is subject to the investigation. A privilege *898 against civil liability is granted by section 455.225(10) “to any complainant or any witness” regarding information furnished with respect to an investigation or proceeding pursuant to this act “unless the complainant or witness acted in bad faith or with malice in providing such information.”
The record before us establishes without contradiction that it is the board’s policy to encourage persons regulated by the cited acts to make confidential complaints in all instances where a registered nurse has been disciplined for professional misconduct by reprimand, loss of privileges, or dismissal. This policy affords the department and its analysts an opportunity to decide whether to investigate the matter and whether, upon further investigation, probable cause exists to file a formal complaint. The department and board evidently discourage regulated professionals from attempting to personally determine probable cause when furnishing information or making a complaint against a registered nurse. According to the uncontradicted testimony of the department’s investigator in this case, approximately seventy-five percent of all cases confidentially reported and investigated result in a finding of no probable cause. The investigator testified that employers of registered nurses are expected to report all terminations of employment involving questionable professional nursing activity, as well as the reasons therefor. The investigation of Ms. Merrill was handled in a confidential manner consistent with the statutes and remained confidential except to the extent confidentiality was waived by Ms. Merrill when she told family, friends, and a prospective employer of the investigation.
The legislative purpose for regulating the practice of nursing, stated in section 464.002, Florida Statutes (1981), is to insure that nurses meet minimum requirements for safe practice and that those falling below minimum competency be prohibited from practicing.[2] This legislative purpose and intent is generally implemented through the disciplinary power and procedures conferred on the board and the department. Chapter 455 contains general provisions for the regulation of all professions under the department’s jurisdiction, while chapter 464 specifically addresses the regulation of nursing. The provisions of both chapters must be read together in light of the legislative purpose stated in section 464.002. The statutes should be construed to implement the more specific provisions of chapter 464 and the board’s policies, procedures, and rules adopted thereunder.
In its amicus curiae brief filed in this case, the Board of Nursing urges as a matter of public policy that our holding avoid any possible construction of the statutory scheme “which would diminish the legal responsibility and requirement of licensees to report possible violations of chapter 464 or of the rules of the Board or Department of Professional Regulation to appropriate authorities.” (Emphasis in brief.) The board points out that “a significant amount of disciplinary cases filed are a result of the complaints of directors of nursing or other employers who are licensees of the Board as is the appellant in the instant case,” and it strongly emphasizes that “there be no chilling effect on a licensee who is obliged to communicate knowledge of a violation” because such licensee “should not have to balance his statutory obligation and a potential suit for malicious prosecution, when acting in good faith.” We agree that the board’s stated policy should be respected and fostered as fully *899 as possible, consistent with the organic statutes.
Malicious prosecution is a common law cause of action consisting of six essential elements: (1) The commencement or continuance of an original criminal or civil proceeding; (2) Its legal causation by the present defendant against the plaintiff who was defendant in the original proceeding; (3) Its bona fide termination in favor of the present plaintiff; (4) The absence of probable cause for such proceeding; (5) The presence of malice; and (6) Damages conforming to legal standards resulting to the plaintiff. Gause v. First Bank of Marianna, 457 So.2d 582 (Fla. 1st DCA 1984). If any one of these elements is lacking, the result is fatal to the cause of action. Buchanan v. Miami Herald Publishing Co., 230 So.2d 9, 11, n. 3 (Fla.1969).
Appellee has cited no decision that upholds a malicious prosecution action based on the making of a complaint to an administrative agency having disciplinary powers over regulated professionals, nor has our independent research disclosed any Florida decision clearly decisive of this issue.[3] Therefore, we address this issue as one of first impression in this state, keeping in mind the described statutory scheme, public policy considerations, and adopted procedure for implementing the legislative purpose and intent underlying the regulation of nurses.
The first element of a malicious prosecution action requires that the defendant have initiated an original criminal or civil judicial proceeding. Appellants do not contend that a quasi-judicial proceeding before an administrative agency cannot legally support a malicious prosecution action. Rather, they contend that the confidential investigative proceeding in this case does not constitute a quasi-judicial proceeding. Appellee, on the other hand, contends that Ms. Cope’s complaint could have led to a chapter 120 formal hearing placing Ms. Merrill’s professional license at risk and that the resulting investigation is necessarily quasi-judicial in character, much like the making of a complaint to prosecuting authorities in a criminal case. Moreover, ap-pellee urges, section 455.225(10) expressly recognizes a willful and intentional tort action against a complaining party who furnishes information “in bad faith and with malice.” We are persuaded that the investigation in this case was not a quasi-judicial proceeding.
*900 According to the Model Rules, investigative proceedings conducted prior to a determination of probable cause are not subject to regulation by chapter 120 and are expressly declared to be a nonadversary executive function to discover or procure evidence as part of the fact-finding function of an agency; further, the agency need not have an administrative complaint pending to conduct an investigation or make such determination. Rule 28-5.110, Florida Administrative Code. This Model Rule has been adopted by the Board of Nursing. Rule 210-6.21, Florida Administrative Code. An administrative proceeding does not become quasi-judicial unless the agency determination is subject to the right to notice and hearing on the part of the person being proceeded against. See DeGroot v. Sheffield, 95 So.2d 912, 915 (Fla.1957). Ms. Merrill had no absolute right to notice and hearing incident to the confidential investigation before the department made a probable cause determination. Such absolute right arose only upon the filing of a formal complaint after the probable cause determination. §§ 120.-57 and 455.225, Fla.Stat. (1981).
As noted above, appellees were obligated to report the information concerning Ms. Merrill to the department for independent evaluation by its complaint analysts and further investigation as they might decide. Further, a complainant is not required to personally investigate and determine that the information is sufficient to support the imposition of discipline before furnishing it to the department.
We hold, in conformity with the Supreme Court’s definition of quasi-judicial proceedings in DeGroot v. Sheffield, 95 So.2d 912 (Fla.1957), and the applicable rules cited above, that the confidential investigation conducted in this case was not a quasi-judicial proceeding and that its initiation by appellees was not legally sufficient to sustain appellees' cause of action for malicious prosecution. This result serves to avoid a substantial chilling effect on the furnishing of information to the department regarding possible deficient professional nursing services. It promotes the purpose and intent of the confidential investigative process, which is to protect the investigated professional while encouraging the filing of complaints so that the department, rather than the complainant, may evaluate and determine whether the matter warrants further investigation and the possible imposition of discipline.
Appellee contends that appellants did not argue in the court below that no judicial proceeding was involved and thus have not preserved this argument for appellate review. We note, however, that the post-trial motion for directed verdict alleges that the verdict is contrary to law because “there was no other evidence but that the defendants were legally bound to report the termination of plaintiffs employment to the Department of Professional Regulation.” We are aware that the motion is required to “state the specific grounds therefor,” rule 1.480, Florida Rules of Civil Procedure. Appellant’s motion is far from constituting a model of specificity and clarity, but we believe that the ground alleged is sufficient to permit consideration of the argument made on appeal. In any event, we may always note as fundamental error and consider for the first time on appeal the failure of the record to establish that the alleged original proceeding legally constitutes a quasi-judicial proceeding because, absent a quasi-judicial proceeding, the plaintiff has no cause of action and the judgment cannot stand. See Henderson v. Morton, 109 Fla. 300, 147 So. 456 (1933). Additionally, matters substantially affecting the public interest, even though not raised in the court below, may be considered for the first time on appeal. 5 Am.Jur.2d, Appeal & Error, § 551 (1962).
Even if the investigation had proceeded to the status of a quasi-judicial proceeding, we agree with appellants that the requisite lack of probable cause is not shown by the evidence and that the court’s denial of a directed verdict for appellants on this ground is likewise error. The sufficiency of the evidence to prove want of *901 probable cause is a question of law for the court where the facts material to that issue are not in dispute. City of Pensacola v. Owens, 369 So.2d 328 (Fla.1979). The record before us contains no evidence contradicting Ms. Cope’s obligation as a registered nurse to report possible violations of professional nursing standards upon terminating a nurse under her supervision. As previously discussed, the department— not Ms. Cope — determines the existence of probable cause to file disciplinary charges. Ms. Cope discussed her complaints concerning Ms. Merrill with an employee of the department and, as a result, signed an investigative complaint prepared by the department.
Ms. Merrill argues that her testimony denying the truth of the charges creates a disputed issue of fact on the probable cause issue. In determining the existence of probable cause, however, the question is not the guilt or innocence of Ms. Merrill but whether appellees had a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to conclude that the department should be informed. See Clements v. Eastern Airlines, Inc., 183 So.2d 264 (Fla. 3d DCA 1966). For this reason the truth or falsity of the charges is not a decisive material fact. The undisputed evidence of the obligation to report possible violations under the circumstances shown is a sufficiently strong objective manifestation of probable cause to make this decision one for the court. See Sussman v. City of Daytona Beach, 462 So.2d 595 (Fla. 5th DCA 1985).
We also agree with appellants that the evidence was legally insufficient to prove the essential element of malice. Ordinarily malice may be inferred from a finding of want of probable cause and generally is an issue for the jury. Gause v. First Bank of Marianna, 457 So.2d 582 (Fla. 1st DCA 1984). Unlike the ordinary malicious prosecution case arising out of an original civil or criminal judicial proceeding, however, here the defendants were protected from civil liability for furnishing information to the department by section 455.-225(10) unless they furnished information “in bad faith and with malice.”[4] We agree with appellants that this statutory provision requires proof of actual or express malice similar to that required in defamation cases where the alleged defamatory statements are qualifiedly privileged and that mere legal or inferred malice such as that inferred from want of probable cause is not sufficient. See Nodar v. Galbreath, 462 So.2d 803 (Fla.1984).
In Nodar the Supreme Court was called on to define the quantum of proof necessary to establish express malice in a defamation case where the alleged defamatory statements were qualifiedly privileged as a matter of law. The court stated:
The legal conclusion that the defendant’s remarks were privileged brings us to the question of express malice. If the statements were made without express malice — that is, if they were made for a proper purpose in light of the interests sought to be protected by legal recognition of the privilege — then there can be no recovery. The determination that a defendant’s statements are qualifiedly privileged eliminates the presumption of malice attaching to defamatory statements by law. The privilege instead raises a presumption of good faith and places upon the plaintiff the burden of proving express malice — that is, malice in fact as defined by the common law doctrine of qualified privilege.
Quoting from Coogler v. Rhodes, 38 Fla. 240, 249, 21 So. 109, 112 (1897), as to proof of malice, the court held:
*902 This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue.
462 So.2d 803 at 810. The court also said:
Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interests giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position “to gratify his malevolence.” (Citations omitted.) If the occasion of the communication is privileged because of a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff. (Citations omitted.) The incidental gratification or personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege. (Citations omitted.)
462 So.2d 803 at 812.
Appellee’s principal argument is that the requisite malice may be inferred from the lack of probable cause. But, as we have shown, not only was the evidence insufficient to establish a lack of probable cause, but inferred malice is legally insufficient to overcome the privilege against liability created by section 455.255(10).
Equally without merit is appellee’s argument that both the timing between her termination and the date Ms. Cope complained to the department and the totality of the circumstances are sufficient evidence of malice to support the jury’s verdict. Appellee argues that Ms. Cope knew the potential results of her complaint and the severity of such a complaint as it related to Ms. Merrill’s profession; that the complaint was made without consulting Ms. Merrill and without sufficient investigation; that some of the matters complained of involved a difference of medical technique; that the falsifying mileage charge was based on one allegedly confirmed example of excessive mileage; that all the charges were expressly denied by Ms. Merrill; that appellants presented no witness other than Ms. Cope to support the charges; and that the evidence supports a revenge motive by appellants to get back at Ms. Merrill after the adverse unemployment compensation decision was received in March — “otherwise, why would they have waited until the unemployment ruling to notify the Department.” Appellee also refers to the fact that the complaint against Ms. Merrill was brought by the same person who had given her a favorable evaluation approximately three weeks prior to her termination. But these facts do not individually or collectively establish actual malice.
The fact that Ms. Cope knew of the potential harm to Ms. Merrill and did not make a complaint immediately upon learning of her obligation to do so, but delayed until approximately ten days after receiving the unemployment compensation decision, is quite consistent with a motivation to delay taking action that might professionally harm Ms. Merrill and thus is not proof of actual malice. See Nodar v. Galbreath, 462 So.2d 803 (Fla.1984). The fact that Ms. Cope made the complaint without consulting Ms. Merrill does not prove actual malice since there was no obligation for Ms. Cope to do so. Appellee's concession that some of the matters complained of by Ms. Cope involved a difference in medical technique negates any inference of actual malice, especially in the presence of the board’s policy to encourage the filing of complaints of possible misconduct and leave the determination of probable cause to the department. Since the department, not a complainant, is responsible for investigating the charges, the alleged lack of sufficient investigation by appellee does not support a finding of actual malice. The *903 contention that the charges were expressly denied by Ms. Merrill and that appellants presented no witness other than Ms. Cope to- support the validity of the charges disregards the testimony of Mr. Long concerning his inquiry into the substance of the charges and resultant findings, and completely ignores the testimony of the department’s investigator that “the essence of [his] investigation” was “to get all the facts,” that he discussed each element of the complaint with Ms. Cope, and that he did not “find any untruths in what Ms. Cope told [him].” R. 270.
The record contains no evidence of statements or observed conduct by Ms. Cope demonstrating express malice. The department’s investigator testified without contradiction that she was cooperative and never showed any malice or ill will toward Ms. Merrill at any time. In summary, there is simply no evidence in the record legally sufficient to establish that Ms. Cope or Health Agency was motivated more by a desire to harm Ms. Merrill than to comply with the obligation to report the circumstances of her termination. That being so, the evidence is legally insufficient to establish the requisite malice. See Nodar v. Galbreath, 462 So.2d 803 (Fla.1984).
We find it unnecessary to reach the other points raised by appellants. We reverse and remand with directions to enter judgment for appellants.
REVERSED and REMANDED.
JOANOS and THOMPSON, JJ., concur.

. This rule was amended November 11, 1984, to provide that a panel of two board members shall make determinations of probable cause.

. Section 464.002 states:
The legislature finds that the practice of nursing by unskilled and incompetent practitioners presents a danger to the public health and safety. The legislature finds further that it is difficult for the public to make an informed choice about nurses and that the consequences of a wrong choice could seriously endanger their health and safety. The sole legislative purpose in enacting this chapter is to insure that every nurse practicing in this state meet minimum requirements for safe practice. It is the legislative intent that nurses who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.

. But for the provisions of section 455.225(10) creating a qualified privilege from civil liability, as hereinafter discussed, we would be inclined to recognize an absolute privilege against liability for making confidential complaints with the department for the same reasons that complaints about lawyers are absolutely privileged. In Stone v. Rosen, 348 So.2d 387 (Fla. 3d DCA 1977), the court recognized "an absolute privilege on the part of a citizen to make a complaint" against a member of The Florida Bar for essentially the same reasons being urged by the Board of Nursing in this case. Id. at 388. Pointing out that the rules of the bar give counsel adequate protection of confidentiality until a finding or probable cause is made and an independent vote to make the matter public is taken, the third district approved the rationale expressed by the New Jersey Supreme Court in Toft v. Ketchum, 18 N.J. 280, 113 A.2d 671 (1955), cert. den. 350 U.S. 887, 76 S.Ct. 141, 100 L.Ed. 782 (1955), where granting an absolute privilege to complainants against attorneys is the result of weighing the two policy considerations — on the one hand, the injury that may be suffered by an attorney as a result of proceedings against him that turn out to be groundless or improper; and, on the other hand, the public interest in encouraging those who have knowledge of any unethical conduct to present such information to the appropriate authority — in substantial part because:
"If each person who files a complaint with the ethics and grievance committee may be subject to a malicious prosecution action by the accused attorney there is no question but that the effect in many instances would be the suppression of legitimate charges against attorneys who have been guilty of unethical conduct, a result clearly not in the public interest." 348 So.2d at 389.
The court concluded that in the interest of maintaining the high standards of professional conduct and disciplining those guilty of violations, one who elects to join the legal profession must give up certain rights or causes of action against those filing a confidential complaint against them. See also Mueller v. The Florida Bar, 390 So.2d 449 (Fla. 4th DCA 1980), where the court concluded that it makes little significant difference whether the protection to potential complainants is phrased in terms of immunity or in terms of absolute privilege.

. Appellee’s complaint contained a count for "libel and defamation of character” (R. 4), but this count was voluntarily dismissed by appellee shortly after the jury trial began. We do not, therefore, find it necessary to consider what legal effect section 455.225(10) might have with respect to a defamation action predicated on statements made during the investigative phase, including whether such statements are absolutely privileged the same as if given in a judicial proceeding.