569 So.2d 458 (1990)
Vicki HEALY, Appellant,
v.
SUNTRUST SERVICE CORPORATION, Appellee.
No. 89-1387.
District Court of Appeal of Florida, Fifth District.
September 6, 1990.
On Motion for Rehearing November 15, 1990.
*459 Corey R. Stutin of Steinberg & Stutin, P.A., Orlando, for appellant.
Wallace Hardy, Orlando and Sam Daniels and Angela C. Flowers of Daniels and Hicks, Miami, for appellee.
COBB, Judge.
The plaintiff below, Vicki Healy, sued Suntrust Service Corporation, for defamation and false imprisonment. Suntrust provided the data processing and customer account processing services for Sun Bank, where Healy worked until she was discharged on January 15, 1989. The termination was precipitated by the discovery that Healy used the bank's money mover system to transfer the sum of $200.00 from her father's account to her own; in doing so, she had violated the bank's rule that money could not be moved by this system from one account to another unless the accounts were titled in the same name.
It is undisputed that Healy's father, Jack Haverhill, had agreed to give her the $200.00. When bank officials learned of the transfer, Healy was called into the office of her supervisor, Mrs. Kovach, where she was advised by several Suntrust officers that she was being discharged for misappropriation of funds. Healy explained that Haverhill gave her permission to transfer the funds, but Suntrust made no effort to verify this information. A police officer was called to the scene by Suntrust, and eventually escorted Healy from the building, but left without making an arrest.
After Healy had gathered her personal belongings and left, Kovach called together approximately twenty to thirty-five bank employees and told them that Healy had been discharged for "misappropriation of funds." Suntrust asserts that "this was done as standard procedure when an employee was fired to avoid rumor and speculation among bank employees as to what had happened" and to "deter future acts like this by employees."
At trial, a jury found no slander and no false imprisonment. We affirm the latter finding, but reverse the former because, based on the undisputed facts, the trial court erred in failing to grant the plaintiff's motion for directed verdict on the defendant's affirmative defense of truth and good motive. The evidence presented at trial demonstrated that Healy did not misappropriate funds. A reasonable person *460 would equate the term "misappropriation" with theft. Theft is defined by Florida Statutory law as follows:
812.014 Theft
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
§ 812.014, Fla. Stat. (1989).
Theft is a specific intent crime, requiring actual knowledge on the part of the defendant. Healy did not possess the requisite intent to knowingly deprive Haverhill of his money. She had Haverhill's permission to withdraw funds from his account and to transfer those funds to her own account. Clearly, Healy's failure to comply with Suntrust's transfer procedures alone was not a theft or misappropriation.[1] Hence, the trial court erred in not granting Healy's motion for a directed verdict on the defense of truth.
The troublesome issue presented by this appeal is Suntrust's argument that it is entitled to prevail on the basis of its defense of qualified privilege. Although this defense was pled by Suntrust and presented to the jury, the jury did not reach the issue since it found that Suntrust was entitled to prevail on the defense of truth and good motive.
Suntrust's argument in regard to qualified privilege is based on Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984). Nodar states that a defendant has a qualified privilege to make a false defamatory statement if he has reason to speak, regarding the plaintiff, to an appropriate audience on a particular subject or occasion. Such person is not liable without proof of "express malice." Nodar at 811. Nodar describes the qualified privilege as:
A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.
Nodar at 809. See also Boehm v. American Bankers Insurance Group, Inc., 557 So.2d 91 (Fla. 3d DCA 1990).
As this court stated in Glynn v. City of Kissimmee, 383 So.2d 774 (Fla. 5th DCA 1980), "qualified privilege" is a defense and the burden of proving it rests with the defendant. Whether the privilege exists or has been exceeded in some manner creates a mixed question of law and fact which normally should be determined by the trier of fact. The existence of a qualified privilege vanishes if the statement is made with malice, or to too wide an audience. See Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Glynn at 776; Arison Shipping Co. v. Smith, 311 So.2d 739 (Fla. 3d DCA 1975), cert. denied, 327 So.2d 31 (Fla. 1976); Belcher v. Schilling, 349 So.2d 185 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 128 (Fla. 1978).
The landmark Florida opinion in regard to qualified privilege is Abraham, written in 1906 by Justice Whitfield. The underlying facts in that case were: the plaintiff, G.M. Baldwin, sued Leonora J. Abraham for slander, claiming that she maliciously and falsely accused him, in the presence of various other persons, of stealing her hoe. The pleadings and proof indicated that Abraham had contracted with a man named Jackson to do certain work for her. Thereafter, she learned that Jackson had employed Baldwin to do a portion of the work. She went to the job site, exchanged acrimonious words with Baldwin, and then told *461 Jackson, in the presence of various other employees, that she did not want Baldwin to do any of the work because he had previously stolen her hoe and was a thief. There was also testimony given to show that Abraham in good faith believed that her accusatory statement was true. Abraham relied, inter alia, upon the defense of qualified privilege.
The supreme court found that the trial court erred in instructing the jury, as a matter of law, that the evidence could not support Abraham's plea of privileged communication. The court held:
Spoken words, falsely imputing to another a criminal offense, are actionable per se, and the law presumes malice in their utterance. Therefore it is not necessary in such a case for the plaintiff in an action for slander to prove express malice, unless the words as spoken constitute a privileged communication.
A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right, or duty, and made upon an occasion to properly serve such right, interest, or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right, or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.
Applying the principles enunciated in Abraham, and reiterated in our opinion in Glynn to the instant case, we believe there are factual issues which should be resolved by the factfinder below: Was the slanderous statement of Kovach to the twenty to thirty-five employees made with express malice? Was it made to too wide an audience? Did Kovach reasonably believe that Healy had misappropriated funds? What was Kovach's purpose in publishing the statement to the other employees? Was that publication to that particular audience [considering its size and nature] necessary to address a legitimate interest of the employer and the employees?
We conclude that the error by the trial court in not directing a verdict on the issue of the defense of truth requires the granting of a new trial. The issue at that new trial will be Suntrust's defense of qualified privilege.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
W. SHARP and COWART, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
In our opinion filed in this cause on September 6, 1990, we stated: "It is undisputed that Healy's father, Jack Haverhill, had agreed to give her the $200.00." This fact was acknowledged at oral argument by counsel for the appellee, Suntrust, and on page one of its Answer Brief filed with this court on November 8, 1989, wherein the following statement appears: "On January 14, 1987, Vicki needed money for a utility deposit and her father agreed to loan her $200.00 for this purpose."
Despite these express acknowledgments by the defendant/appellee, Suntrust has now filed with this court a motion for rehearing challenging the above statement in our opinion as being an erroneous determination of a fact about which there was conflicting evidence at trial, a conflict which the appellee now asserts was resolved by the jury adversely to the plaintiff.
The appellee's motion for rehearing is in direct conflict with the facts which it previously represented to this court. Nothing in the record before us refutes the fact as previously agreed upon by the parties to this appeal. Accordingly, the motion for rehearing by the appellee, Suntrust Service Corporation, is hereby stricken as scurrilous.
COBB, W. SHARP and COWART, JJ., concur.
NOTES
[1] Suntrust contended that the funds on deposit did not belong to Haverhill, but that they belonged to Suntrust due to the debtor-creditor relationship existing between a bank and its depositors. The argument that Suntrust, rather than Haverhill, must authorize the transfer of funds is unavailing. If the $200.00 was owned by the bank prior to Healy's transfer, then it was also owned by the bank after the transfer because the money remained in Healy's account when she was fired.