# Third District Court of Appeal
## State of Florida

Opinion filed February 15, 2023.
Not final until disposition of timely filed motion for rehearing.
_____

No. 3D22-203
Lower Tribunal No. 19-9386
_____

**World Cellphones Distributors Corp., etc., et al.,**
Appellants,

vs.

**De Surinaamsche Bank, N.V., etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Sordo & Associates, P.A., and Cesar R. Sordo, for appellants.

Maeder Infantolino, LLC, and Dayna Maeder and Camille Infantolino (Jupiter), for appellee.

Before LOGUE, MILLER, and BOKOR, JJ.

LOGUE, J.

World Cellphones Distributors Corp. ("World Cellphones") and Ileana

Calderon (collectively, "Appellants") appeal a final summary judgment

entered in favor of De Surinaamsche Bank, N.V. ("DSB") on DSB's claims of conversion, civil theft, and unjust enrichment. We affirm the trial court's grant of summary judgment as it pertains to DSB's claim of conversion because Appellants stipulated to the key facts that establish their liability as a matter of law. We reverse, however, as to DSB's claim of civil theft because the record reflects a lack of clear and convincing evidence regarding the felonious intent necessary to establish Appellants' liability.[1] Accordingly, we remand for further proceedings on the civil theft claim.

## Factual and Procedural History

The underlying action arose from an erroneous duplicative wire transfer sent by DSB to World Cellphones. DSB alleged in its Complaint that in December 2017, Prestige Imports, N.V., a DSB business banking customer, initiated a payment order containing international wire transfer instructions. The wire transfer served as payment for wholesale goods Prestige purchased from World Cellphones, which totaled $119,490.00.

According to the payment order, DSB was to transfer $119,490.00 from Prestige's account at DSB into World Cellphones' account at Regions Bank. This initial wire transfer was successfully executed on December 17, 2017,

---

[1] Because the record sufficiently supports a finding of conversion, we need not reach the merits of the unjust enrichment claim.

and World Cellphones' account at Regions Bank was credited in the amount of $119,490.00. On December 18, 2017, Prestige notified DSB of an error on the international wire transfer request, stating that Regions Bank was the incorrect beneficiary bank, that the correct beneficiary bank was Bank of America, and that the funds should have been credited into World Cellphones' account at Bank of America.

Based on Prestige's notification, DSB immediately recalled the initial wire transfer and initiated wire transfer instructions for the deposit of funds into World Cellphones' account at Bank of America. This second wire transfer was successfully executed on December 19, 2017, and World Cellphones' account at Bank of America was credited in the amount of $119,490.00.

About a month later, DSB discovered that the initial wire transfer was never successfully recalled and reached out to Regions Bank. Regions Bank responded and confirmed a credit to World Cellphones' account in the amount of $119,490.00 on December 17, 2017, but advised it was unable to credit back the funds because the account was closed on December 20, 2017. At DSB's request, Bank of America, as beneficiary bank for the second wire transfer, contacted World Cellphones' account owner, Ileana Calderon, notifying her of the duplicative wire transfer and requesting that funds be

3

credited back to DSB's account. Ms. Calderon refused debit authority, stating that World Cellphones had already provided Prestige with goods.

Appellants filed an Answer and Affirmative Defenses and admitted receiving various demands from DSB explaining the banking error and requesting return of the duplicate wire transfer. Appellants nevertheless alleged in their affirmative defenses that the funds received from DSB were sent on behalf of Prestige and were used by Prestige to purchase merchandise from World Cellphones. Appellants further alleged, in pertinent part, that World Cellphones lacked intent to defraud and that there was no cause of action against Ms. Calderon while acting in her corporate capacity.

On November 2, 2020, DSB moved for summary judgment and argued it was undisputed that Appellants received duplicate wire transfers in the amount of $119,490.00 and that they tortiously and inequitably kept both amounts despite having knowledge that DSB was the rightful owner of the duplicate funds. DSB also argued that Ms. Calderon personally participated in the tortious and inequitable conduct, having retained and converted DSB's funds and then refused debit authority for the return of the funds. Among other things, DSB attached to its motion for summary judgment electronic correspondences reflecting the information received from Regions Bank stating that the initial wire transfer could not be recalled because the account

4

had been closed and the account balance had been issued to the account owner, and the information received from Bank of America stating that Ms. Calderon had refused to give debit authorization for return of the second wire transfer because "she already gave merchandise to the client." DSB did not submit any affidavit in support of its motion for summary judgment.

Appellants did not file a written response in opposition to DSB's motion for summary judgment, but filed an affidavit of World Cellphones' Vice President, Alex Calderon, on December 31, 2020. In his affidavit, Mr. Calderon stated that Prestige and a related company, Flex Wholesale & Retail, N.V. ("Flex"), both owned and operated by Richanand Dassasingh, were customers of World Cellphones and that between December 15, 2017 and January 29, 2018 World Cellphones sold to Prestige and Flex a total of $366,057.00 in products. Mr. Calderon attested to receiving the two wire transfers, each for $119,490.00, from Prestige and stated that at the direction of Mr. Dassasingh the two wire transfers were applied to the invoices due from Flex. Mr. Calderon further stated that Ms. Calderon "had absolutely nothing to do with any transactions of either Prestige and Flex as they [were] both [Mr. Calderon's] customer and [he] was the person handling those accounts."

5

On January 5, 2021, the trial court held a hearing on DSB's motion for summary judgment. During the hearing Appellants expressly stated that they did not dispute the fact that World Cellphones received duplicate wire transfers of $119,490.00 and that Ms. Calderon refused debit authority for a return of the duplicate wire transfer. Appellants' position, essentially, was that the wire transfers had been credited to Prestige and Flex's accounts for goods provided to them. DSB argued the duplicate wire transfer did not belong to Prestige but rather DSB, that DSB advised World Cellphones of this and demanded the return of its money, and that World Cellphones refused to return the funds and kept the funds.

On February 17, 2021, the trial court issued its Order granting DSB's motion for summary judgment. The trial court found it was undisputed by the parties that a banking error occurred; that DSB failed to successfully recall the initial wire transfer; that DSB's account remained debited in the amount of $119,490.00; that among the invoices produced by World Cellphones there was only one invoice to Prestige in the amount of $119,490.00; that World Cellphones received two wire transfers, each in the amount of $119,490.00; that Ms. Calderon was the owner and authorized individual on World Cellphones' Regions Bank and Bank of America accounts; that Ms. Calderon had knowledge of the banking error and refused debit authority to

6

return the funds; that World Cellphones applied the funds to Flex's invoices; and that upon DSB's written demands, World Cellphones and Ms. Calderon failed to return the duplicate funds based on World Cellphones' application of the funds to Flex's invoices.

DSB moved for entry of final judgment after the trial court granted its motion for summary judgment and attached an affidavit stating that the copies of the correspondences, International Transfer Request and Wire Transaction Instructions attached to its Complaint and motion for summary judgment were true and correct copies of DSB's business records. Appellants moved for rehearing and argued DSB failed to support its motion for summary judgment with any affidavits or other admissible evidence. Appellants also argued DSB failed to refute their various affirmative defenses. The trial court denied rehearing and final judgment was rendered.

## Analysis

We review a trial court's order on a motion for summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

I.    *Conversion*

The tort of conversion "constitutes the exercise of wrongful dominion and control over [ ] property to the detriment of the rights of its actual owner."

7

_Envases Venezolanos, S.A. v. Collazo_, 559 So. 2d 651, 652 (Fla. 3d DCA 1990). "Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." _Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd._, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984). "[T]he intentional tort of conversion . . . does not contain malice as one of its essential elements, as the tort may be established upon a showing of the taking by the defendant of personal property belonging to the plaintiff upon a mistaken belief as to the legal right of the defendant to the converted property." _Ciamar Marcy, Inc. v. Monteiro Da Costa_, 508 So. 2d 1282, 1283–84 (Fla. 3d DCA 1987).

Although Appellants challenge the admissibility, and thereby the sufficiency, of DSB's summary judgment evidence on appeal, the record reflects that key facts were indeed undisputed. First, Appellants expressly admitted receiving duplicate wire transfers for $119,490.00 and exercising dominion and control over the wire transfers. Second, Appellants admitted receiving various demands from DSB explaining the banking error and requesting return of the duplicate wire transfer. Third, Appellants did not dispute that they refused to return the duplicate wire transfer.

These undisputed facts are sufficient to support the trial court's conclusion that Appellants were liable for conversion as a matter of law. _See_

8

Senfeld, 450 So. 2d at 1161. See also Barak v. ACS Int'l Projects, Ltd., 347 So. 3d 81, 82 n.1 (Fla. 3d DCA 2021) ("Under Florida law, an officer of a corporation who commits or participates in a tort, whether or not it is in furtherance of corporate business and whether or not it is by authority of the corporation, is liable to the injured party whether or not the corporation is also liable." (internal citations and quotation marks omitted)).

Moreover, while Appellants may have been under the mistaken belief that they had a legal right to the duplicate wire transfer based on their subsequent sale of goods to Flex, this affirmative defense is insufficient as a matter of law to preclude a finding of conversion. See Ciamar Marcy, Inc., 508 So. 2d at 1283-84. Accordingly, Appellants' claim of error regarding the admissibility and sufficiency of DSB's summary judgment evidence does not require reversal.

II.    *Civil Theft*

Civil theft, on the other hand, is a statutory form of conversion that essentially consists of "conversion plus criminal intent." Gokalp v. Unsal, 284 So. 3d 1097, 1099 (Fla. 4th DCA 2019) (emphasis added). To maintain a cause of action under the civil theft statute a plaintiff must show, by "clear and convincing evidence," an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws found in sections

9

812.012-037 or section 825.103(1), Florida Statutes. § 772.11(1), Fla. Stat.

Section 812.014(1), Florida Statutes, provides:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

In order to establish a violation of section 812.014(1), a plaintiff must show that the defendant knowingly obtained or used the plaintiff's property with the felonious intent to appropriate the property to the defendant's own use or the use of any person not entitled to the use of the property. See Orozco v. McCormick 105, LLC, 276 So. 3d 932, 935 (Fla. 3d DCA 2019). "Theft is a specific intent crime, requiring actual knowledge on the part of the defendant." Healy v. Suntrust Serv. Corp., 569 So. 2d 458, 460 (Fla. 5th DCA 1990).

Here, the record reflects a lack of clear and convincing evidence regarding the felonious intent necessary to establish Appellants' liability for civil theft. In its Complaint, DSB alleged Appellants' felonious intent was established "[b]y [Appellants'] withdrawing the funds credited by the Initial

10

Wire Transfer and immediately closing its Regions Bank account one day after having accepted and received a secondary account credit in its Bank of America account for the exact same dollar amount as the Initial Wire Transfer[.]" DSB argued this demonstrated Appellants' "felonious intent to deprive DSB of its right to, or benefit from, the property; or it display[ed] Appellants'] felonious intent to appropriate DSB's property for [Appellants'] own use."

In order to establish this, however, it was necessary for DSB to produce evidence showing that Appellants closed the Regions Bank account. The subpoenaed bank records submitted in support of the summary judgment motion establish only that the account was closed. Appellants disputed, however, that they voluntarily closed the account and contended Regions Bank involuntarily closed the account. It was DSB's burden to establish felonious intent and it failed to establish this necessary element by clear and convincing evidence in the record showing that it was Appellants that closed the Regions Bank account the day after they received the second wire transfer into their Bank of America account. Furthermore, Appellants' affidavit in opposition to summary judgment calls into question whether Appellants had the intent to deprive DSB of its property or whether Appellants were under the (mistaken) belief that the funds came from their

11

client Prestige and that they were to credit those funds to the future purchases of Prestige and Flex. Accordingly, we reverse as to DSB's claim of civil theft and remand for further proceedings.

Reversed and remanded.