567 So.2d 497 (1990)
AMERICAN IDEAL MANAGEMENT, INC., Rene Gauvreau, Individually, and Vera Gauvreau, His Wife, Appellants,
v.
DALE VILLAGE, INC., Etc., et al., Appellees.
No. 88-3252.
District Court of Appeal of Florida, Fourth District.
September 19, 1990.
Rehearing Denied October 23, 1990.
*498 Pesetsy & Zack, P.A., North Miami Beach, and Joseph C. Segor, Miami, for appellants.
Stephanie Arma Kraft of Conrad, Scherer & James, Fort Lauderdale, for appellees.
WARNER, Judge.
This is an appeal from a final summary judgment in favor of defendant-appellee on two counts of defamation, one count for tortious interference with a business relationship and one count for specific performance. We affirm as to the count for tortious interference but reverse with respect to the defamation and specific performance counts.
The material facts to the disposition of the points on this appeal are as follows: Appellee Dale Village is a cooperative homeowner's association which owns and operates a mobile home park in Broward County through its board of directors including the individual appellees herein. Appellant American Ideal Management, Inc., was employed as the exclusive managing agent for the park in January 1985. Appellant Gauvreau is one of the founding officers of American Ideal. In September of 1985, appellee decided to terminate the contract with appellant. Later on, because of controversy in the park over the termination of American Ideal, the board of directors posted two information bulletins outlining the alleged reasons for the termination as well as a letter to appellant Gauvreau alleging park rules violations with respect to property owned by him. These documents were posted on the front door of the recreation hall. The recreation hall is frequented not only by owners but also by residents who were not mobile home owners. In addition the recreation hall held bingo every week, and nonresidents would visit the hall on those occasions, passing through the doors where the allegedly defamatory materials were posted. The information bulletin was also distributed to residents attending a board of directors meeting of appellee Dale Village, Inc.
These allegedly defamatory statements resulted in the filing of the instant suit for damages. In addition, Appellant filed suit for specific performance of the contract, claiming that on termination an audit of the books and records was required to be performed at the Association's expense but that the Association refused to perform the audit. Appellees moved for summary judgment on all counts, and the court granted the same, entering final judgment for appellees. Appellants claim in their appeal that the court erred in granting the summary judgment in both the defamation action and in the specific performance count, which we address in order.

I. DEFAMATION
The appellants allege that the statements contained in the information bulletins were false and published with malice. On their motion for summary judgment appellees claimed that the statements were true but did not ground their motion on this issue. Instead they claimed that defendants had a qualified privilege to publish and that there was no proof that the matter was published to any persons who were not within the scope of the privilege. Therefore, for purposes of appeal we consider only the issues of qualified privilege and publication and assume that there still remains material issues of fact as to truth or falsity and as to malice.
In order for a defamatory statement to be actionable it must be published. Publication requires communication to one other than the person defamed. Tyler v. *499 Garris, 292 So.2d 427 (Fla. 4th DCA 1974). In the instant case several persons testified by way of deposition that they had seen the allegedly defamatory documents posted on the door to the recreation hall or received them at the board of directors meetings. Therefore, there was direct evidence that the matter was communicated to third persons who were owners and resident nonowners. In addition, there was circumstantial evidence from which an inference could be drawn that the libel was published to others, even nonresidents of Dale Village. The notices were placed on the door of the recreation hall where nonresidents as well as residents congregated. The testimony by deposition revealed that placing announcements on the rec hall door was the normal method of communication to persons using the park. In fact one of the questioned information bulletins included not only the defamatory statement but also included such additional information as new office hours, rules regarding use of the recreation hall, and reminders regarding rules on sale of mobile homes. Thus, the allegedly libelous statements were prominently placed on the door of the recreation hall for the purpose of disseminating their contents to persons passing through the doors, including nonresidents. We find this case analogous to Lombardi v. Flaming Fountain, Inc., 327 So.2d 39 (Fla. 2d DCA 1976). In that case the third district held that in a slander action it is not necessary to produce witnesses who heard the defamatory words spoken, where publication may be inferred from the fact that the words were uttered in a loud voice in the presence of others and under circumstances in which the words would likely be overheard. Similarly, a jury could infer the publication of written words set forth in a place of prominent public access where the area is frequented by the public in general.
Appellees in effect concede the publication of the letter and information bulletin to the residents and stockholders of Dale Village. They contend, however, that they had a qualified privilege to do so because, as the board of directors, they were communicating to the stockholders and residents of the mobile home park on a subject of interest to both the board and the stockholders, namely the termination of American Ideal Management. In Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984), the supreme court set forth the defense of qualified privilege as follows:
"One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused." Restatement (Second) of Torts § 593 (1976). The law of Florida embraces a broad range of the privileged occasions that have come to be recognized under the common law. See Rahdert & Snyder, Rediscovering Florida's Common Law Defenses to Libel and Slander, 11 Stetson L.Rev. 1 (1981). "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." 19 Fla.Jur.2d Defamation and Privacy § 58 (1980). See Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906) (footnote omitted).
Nodar at 809. The essential elements of a qualified privilege are (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion, and (5) publication in a proper manner. Nowik v. Mazda Motors of America (East), 523 So.2d 769 (Fla. 1st DCA 1988). The qualified privilege vanishes, however, when the defamatory statement is made with express malice. Nodar at 810; Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Glynn v. City of Kissimmee, 383 So.2d 774 (Fla. 5th DCA 1980).
Applied to the instant case, it appears that the facts regarding the existence of the qualified privilege and malice are disputed. First, there is the question of whether the audience to which the defamatory *500 statements were published had the corresponding interest in the subject matter of the communication, or whether it was broadcast to a wider general audience. The communication reached not only owners and residents of the park who would have a corresponding interest but also there is at least circumstantial evidence that it reached nonresidents. Furthermore, with respect to the posted letter regarding rules violations by Mr. Gauvreau, whether stockholders and residents had any legal, moral or social interest in such communications and whether or not the statements were made to too wide an audience are questions for the trier of fact. Hartley & Parker v. Copeland, 51 So.2d 789, 790 (Fla. 1951). Glynn v. Kissimmee at 726.
Secondly, the parties hotly contest whether or not the statements were made with express malice. Appellant claims that all the reasons given for the termination of the management contract were false and a sham; that the minutes of the board meeting do not reveal any reasons for the firing; that the reasons were manufactured at a later time in order to afford false justification for the termination, and that one of the allegations inferred criminal wrongdoing on the part of appellant. Thus, there are disputed issues of fact regarding the existence of express malice which preclude the entry of summary judgment. Glynn.

II. SPECIFIC PERFORMANCE
The agreement between American Ideal and Dale Village provided that on termination:
the contracting parties shall account to each other with respect to all matters outstanding as of the date of termination, and the association shall furnish the agent security satisfactory to the Agent [American Ideal] against any outstanding obligations or liabilities which the agent may have incurred hereunder. The Association agrees to sign a release once an audit has been conducted by a Certified Public Accountant, said audit to be conducted promptly upon termination. The costs of the audit are to be borne by the association.
Despite the provisions of the agreement the Association determined not to conduct an audit to save money. Instead an accountant conducted a review of the Association's financial statements. In their letter of engagement the accountants told the Association that such a review could not be relied on to disclose irregularities or illegal acts such as fraud or defalcations. Since the information bulletins implied that the cause of appellant's termination was theft of Association funds, appellant insisted on an audit and sued for specific performance of that contractual provision.
Defendant Association moved for summary judgment claiming that the contract had been substantially performed by conducting a review. It argued that since the requirement of an audit was intended for the benefit of the Association, the financial review conducted substantially complied with the requirement of the contract. In support it attached an affidavit of an attorney who had drafted management agreements (not the one in this case) who stated that a provision for an audit, in his opinion, is included in a management agreement for the benefit of the mobile home park to ensure that all monies are accounted for upon termination of the management agreement. Based on this, the court entered summary judgment denying specific performance.
The appellee has mistakenly relied on the legal doctrine of substantial performance in this case. The doctrine of substantial performance summarized in Ocean Ridge Development Corp. v. Quality Plastering, Inc., 247 So.2d 72 (Fla. 4th DCA 1971), permits recovery on a contract where the performance of promisee has been so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor's right to recover whatever damages the promisor has suffered by the promisee's failure to render full performance. That doctrine does not have application in this suit for specific performance by appellant. Instead, appellee *501 is seeking to substitute another type of performance for that required in the contract.
The legal theory which applied to this case is the doctrine of waiver which holds that a party may waive a covenant of a contract for whose benefit it is inserted. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (Fla. 1945); Masser v. London Operating Co., 106 Fla. 474, 145 So. 79 (Fla. 1932). However, the application of waiver necessitates the finding that the covenant sought to be waived was inserted in the contract for the benefit of the party seeking the waiver. On this record, there is still a dispute over this material issue of fact. The contractual obligation suggests that the obligation is mutual since the Association is obligated to furnish security to appellant for outstanding liabilities appellant may have incurred. The amount of such outstanding obligations incurred by appellant, and thus the amount of security which the Association must supply, might require an audit for the protection of both parties. In addition the affidavit of the attorney which states that in general the purpose of audit provisions is for the protection of the mobile home park is insufficient to conclude that issue in this case because there is no evidence of the intent of the parties as to this particular contract. It is also in conflict with appellant Gauvreau's testimony to the effect that he was entitled to the audit to clear the charges being made by Dale Village directors regarding the handling of the association accounts by American Ideal. There is a conflict as for whose benefit the covenant for performance of the audit was inserted. Therefore, summary judgment was improperly entered where disputed issues of material fact remained.
Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
HERSEY, C.J., and DOWNEY, J., concur.