761 So.2d 401 (2000)
Charles D. THOMAS, Appellant,
v.
TAMPA BAY DOWNS, INC. d/b/a Tampa Downs Race Track And Thoroughbred Racing Protective Bureau, Appellees.
No. 2D99-416.
District Court of Appeal of Florida, Second District.
May 12, 2000.
*402 Nancy A. Lauten and Charles Tyler Cone of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellant.
Brendan M. Lee and Sandra L. Fanning of MacFarlane, Ferguson & McMullen, Tampa, for Appellees.
CASANUEVA, Judge.
Charles D. Thomas appeals the summary final judgment entered against him on an amended complaint filed against Tampa Bay Downs, Inc., and Thoroughbred Racing Protective Bureau. He asserts the trial court improperly concluded that Tampa Bay Downs and the Bureau were entitled to their defense of qualified privilege as a matter of law in this libel *403 and slander action. We affirm in part and reverse in part.
Appellant's amended complaint asserted that on two occasions Robert Kibbey, who was employed by the Bureau and functioned as the Director of Security at Tampa Bay Downs racetrack, libeled and slandered him. The first instance was a report about Appellant that Mr. Kibbey produced in the course of his employment. The report states that Mr. Kibbey received a complaint from a Ms. Bonomi about Appellant. She told him that Appellant had placed an employment classified ad seeking women who wished to learn the race horse business and become a horse trainer. Allegedly, Appellant offered her an all expense paid trip to New Orleans, ostensibly for the purpose of helping him take delivery of five horses that he had purchased. Before leaving for the Big Easy, Appellant, as Ms. Bonomi recounted to Mr. Kibbey, took her on a tour of the stable area of Tampa Bay Downs, pointed out several horses, and stated that they were his. According to Ms. Bonomi, the trip did not proceed as advertised and she became suspicious. Concluding that she had been duped, she telephoned for money from home and returned to Tampa as did another woman who had accepted the advertised job opportunity.
Based on Ms. Bonomi's allegations, Mr. Kibbey issued an order prohibiting Appellant, an experienced blacksmith who had previously worked on occasion at the racetrack, from entering Tampa Bay Downs. Because of this order, Appellant was denied admittance to the racetrack grounds on February 20, 1994. After speaking with Appellant at this time, Mr. Kibbey drafted and disseminated to Bureau members the confidential report detailing Ms. Bonomi's allegations. Bureau members, who are thoroughbred racetrack owners and operators, utilize such reports at their respective racetracks for security or employment purposes.
In addition to the computer report, the amended complaint claimed that Mr. Kibbey was spreading rumors that Appellant had transported three women to the Crescent City for immoral and improper purposes. However, Mr. Kibbey's report to Bureau members made mention only of the incidents Ms. Bonomi had recounted to him and the fact that he had denied Appellant entry to Tampa Bay Downs. Mr. Kibbey's affidavit filed in support of the motion for summary judgment stated that he knew that Appellant did not own any horses and that his superiors had instructed him to deny Appellant entry because of his false representations to Ms. Bonomi. His Bureau report does not mention anything about "immoral or improper purposes."
The second allegedly defamatory statement involved Joseph Bilodeau who had accompanied Appellant and the women to New Orleans. The amended complaint alleged that Mr. Bilodeau spoke to Mr. Kibbey by telephone on March 12, 1994, seeking a job reference for Appellant. According to Mr. Bilodeau's affidavit, Mr. Kibbey told him that Appellant had run an advertisement seeking female trainers, whom he then transported to New Orleans and pimped for their services. Further, Mr. Kibbey allegedly told him that Appellant had engaged in identical conduct with his former wife, who had later left Appellant. Mr. Kibbey's counter-affidavit denied that such a conversation had taken place or that he had ever made these statements.
In addition to challenging the veracity of Appellant's allegations, Tampa Bay Downs and the Bureau asserted multiple affirmative defenses. Among the defenses was that of qualified privilege.
The trial court initially entered a summary judgment on behalf of the Appellees concluding that there were no genuine issues of material fact and that, as a matter of law, Appellant was not entitled to relief. Accompanying his motion for rehearing, Appellant filed the affidavit of Starla Blair, *404 his ex-wife. In her affidavit, Ms. Blair described a 1985 incident that occurred at Tampa Bay Downs racetrack while she was married to Appellant. Ms. Blair had been taken to the security office where Mr. Kibbey accused her of stealing from the track. She stated that Mr. Kibbey told her that Appellant was living off the earnings of two girls and that they were hookers for him. Further, Mr. Kibbey said to Ms. Blair that it was only a matter of time and he would "get" Appellant, even if it was the last thing he ever did. Mr. Kibbey's counter-affidavit also denied making such statements to Ms. Blair. The motion for rehearing was denied and this appeal followed.
We first note that the movant for summary judgment, Appellees here, must conclusively demonstrate that Appellant, as the nonmoving party, cannot prevail. See Christian v. Overstreet Paving Co., 679 So.2d 839 (Fla. 2d DCA 1996). Thus, if there exists the possibility of any issue or even "the slightest doubt that an issue may exist," Pep Boys v. New World Communications of Tampa, Inc., 711 So.2d 1325, 1328 (Fla. 2d DCA 1998), a motion for summary judgment must be denied. It is with these principles in mind that we examine the evidence at the time Appellees moved for summary judgment.
We begin with the computer report sent by Mr. Kibbey to the various Bureau members. We assume for purposes of this appeal that the report's contents are defamatory. However, no liability will attach to it if it was published upon an occasion that makes it qualifiedly privileged and the privilege was not abused. See Nodar v. Galbreath, 462 So.2d 803 (Fla.1984); see also Restatement (Second) of Torts, § 593 (1976).
As laid out in Nodar, the essential elements of the qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner. See id. at 809; see also American Ideal Management v. Dale Village, 567 So.2d 497 (Fla. 4th DCA 1990). The question of whether the computer report is privileged is a question of law properly decided by a court if the circumstances surrounding the communication are undisputed or so clear under the evidence as to be unquestionable. See Nodar, 462 So.2d at 810; see also John Hancock Mut. Life Ins. Co. v. Zalay, 581 So.2d 178 (Fla. 2d DCA 1991).
Conduct is within the scope of one's employment so as to be immune from an action for defamation if it is the type of conduct that the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the job, and the conduct is activated at least in part by the employee's purpose to serve his or her employer. See Alfino v. Department of Health and Rehabilitative Services, 676 So.2d 447 (Fla. 5th DCA 1996). In light of these guiding principles, it is clear that Mr. Kibbey's report enjoyed a qualified privilege. As security director at one member racetrack, it was his duty to communicate to the other members of the Bureau conduct by persons involved in racetracks and racing that is detrimental to the interests of Bureau members. As the report was sent only to Bureau members, it was properly published to a limited group of interested parties.
Once it is determined that Mr. Kibbey's report is qualifiedly privileged, it becomes cloaked with a legal presumption of good faith. To overcome this presumption, Appellant bears the burden of proving the report was made with express malice. See Nodar, 462 So.2d at 810; Lewis v. Evans, 406 So.2d 489, 492 n. 3 (Fla. 2d DCA 1981). In Florida, express malice sufficient to overcome the presumption exists "where the primary motive for the statement is shown to be an intention to injure the plaintiff." Nodar, 462 So.2d at 806 (citing Loeb v. Geronemus, 66 So.2d 241 (Fla.1953)). Appellant's evidence fails *405 to overcome this presumption. To suggest express malice, he offers only the statements Mr. Kibbey allegedly made in 1985 to Ms. Blair. The nine year gap between the 1985 statements and the 1994 report is insufficient to prove that Mr. Kibbey's primary motive in reporting Appellant's conduct to Bureau members was to injure Appellant. Appellant would have to provide evidence of express malice in closer temporal proximity to overcome the presumption of good faith attaching to the qualified privilege such as is seen in the following two cases.
In Randolph v. Beer, 695 So.2d 401 (Fla. 5th DCA 1997), allegedly defamatory statements were made concerning the operation of a credit union. Evidence suggesting malice included that the defendant was the source of a kickback rumor concerning the plaintiff and that there was contemporaneous ongoing animosity between the parties about the credit union's operation. Similarly, in American Ideal Management, the existence of express malice was based on conduct surrounding termination of the plaintiff's management contract. There was evidence that the reasons given for the termination were manufactured after the fact; thus, the expressions of malice were made closely in time to the contract's termination. Although it is dicta, these cases indicate that the evidence of malice was in close temporal proximity to the alleged defamatory statement. Appellant's nine-year-old evidence with no intervening conduct is insufficient to prove that the alleged defamer's primary motive is malice. This is so especially in this employment context where Mr. Kibbey had a duty to report negative incidents. Accordingly, we affirm the trial court's entry of final summary judgment as it pertains to Mr. Kibbey's computer report.
However, we conclude the trial court erred in granting summary final judgment regarding the oral statements Mr. Kibbey allegedly made to Mr. Bilodeau. At the very least, there is an issue of material fact that is disputed because Mr. Kibbey denied ever speaking with Mr. Bilodeau or making the statements about "pimping" attributed to him. If the jury should find that Mr. Kibbey did speak with Mr. Bilodeau, he would be protected by the legislative codification of the common law of qualified privilege in defamation cases as it relates to comments about job performance which are presumed to have been made in good faith. See § 768.095, Fla. Stat. (1993)[1]; see also Linafelt v. Beverly Enterprises-Florida, Inc., 745 So.2d 386 (Fla. 1st DCA 1999). Malice is still an issue in the statutory scheme and may be inferred by the language utilized in the communication. In light of the requirements for a summary final judgment, we cannot conclude that the manner and mode of Mr. Kibbey's alleged communication to Mr. Bilodeau excludes the possibility that the primary motive for the statement was to injure Appellant. Accordingly, as to that statement as pleaded in the amended complaint, the final summary judgment is reversed.
Finally, we observe that Appellant's amended complaint lumped both alleged defamatory statements into one count. To avoid the possibility of later prejudice, it may be necessary to permit Appellant to *406 replead the remaining incident as his single cause of action.
Affirmed in part; reversed in part, and remanded for further proceedings.
SALCINES, J., Concurs.
PARKER, A.C.J., Concurs in result only.
NOTES
[1] This section provides:

768.095. Employer immunity from liability; disclosure of information regarding former employees
An employer who discloses information about a former employee's job performance to a prospective employer of the former employee upon request of the prospective employer or of the former employee is presumed to be acting in good faith and, unless lack of good faith is shown by clear and convincing evidence, is immune from civil liability for such disclosure or its consequences. For purposes of this section, the presumption of good faith is rebutted upon a showing that the information disclosed by the former employer was knowingly false or deliberately misleading, was rendered with malicious purpose, or violated any civil right of the former employee protected under chapter 760.