**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14191

_____

MONARCH AIR GROUP, LLC,
  a Florida limited liability company,
  d.b.a. Mercury Jets,
DAVID GITMAN,

*Plaintiffs-Appellants,*

*versus*

JPMORGAN CHASE BANK, N.A.,
  a foreign profit corporation,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-62429-WPD

_____

Before ROSENBAUM, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants David Gitman and Monarch Air Group, LLC (collectively, "Monarch"), appeal the district court's grant of summary judgment on their defamation claims against JPMorgan Chase Bank, N.A. ("Chase").

The parties' dispute stems from Chase's addition of Monarch to its internal anti-money-laundering "interdiction" list in mid-2020. After that point, Chase canceled its customers' attempts to wire money to Monarch. When it did so, Chase told its customers that the payment could not go through "due to Sanctions and/or Internal JPMC Policy."

Monarch contends that this statement was false because Monarch was not subject to investigations or sanctions by the U.S. Treasury Department's Office of Foreign Assets Control. On top of that, Monarch asserts that Chase built a "bureaucratic defamation machine" to knowingly spread untrue information about it.

On appeal, Monarch challenges three of the district court's rulings in furtherance of its order granting summary judgment for Chase. First, Monarch argues that the district court abused its discretion by striking a statement of undisputed material facts that Monarch filed, because Monarch failed to comply with a local rule. Second, Monarch maintains that the district court erred in holding that Chase's statements to customers were protected by qualified privilege and made without express malice. Third, Monarch contends that the court abused its discretion by denying Monarch's motion for relief from the judgment based on alleged discovery misconduct by Chase.

After careful review, we find no error or abuse of discretion. So we affirm the district court's rulings.

## I.    BACKGROUND

### A.  Factual Background[1]

Plaintiffs-Appellants are Monarch Air Group, LLC, a Florida-based air-charter provider, and David Gitman, the owner and president of the LLC.  Defendant-Appellee Chase is a national bank.  In mid-2020, Chase placed Monarch on an internal "interdiction" list based on company procedures.

Monarch's presence on the interdiction list led Chase to cancel Chase accountholders' attempted wire transactions to Monarch.  Chase sent a message to accountholders whose wire transactions it canceled.  That message read, "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." Chase made that statement according to its standard operating processes.  Monarch contends that the statement was false and substantially harmed its reputation and its relationship with customers.

### B.  Procedural History

In November 2021, Monarch sued Chase in Florida state court.  Chase removed the case to the U.S. District Court for the

---

[1] Unless otherwise noted, we recount the undisputed facts from the summary-judgment record.

Southern District of Florida.  After amending its complaint twice, Monarch brought four claims: three counts of defamation (slander, libel, and defamation by implication) and one count of tortious interference with a business relationship.

In January 2023, Monarch and Chase filed cross-motions for summary judgment.  Two weeks later, Chase made a supplemental production of documents after the close of discovery.  Based on that late production, Monarch sought and received added time to oppose Chase's motion for summary judgment and respond to Chase's statement of undisputed material facts.  Monarch also obtained leave to amend its own motion for partial summary judgment and supporting statement of undisputed material facts.

But Monarch never successfully got its amended motion onto the docket.  On February 22, 2023, the district court struck Monarch's amended motion and supporting statement of undisputed material facts.  The court explained that the statement of undisputed material facts violated a local rule's mandate to consist of numbered paragraphs "limited as far as practicable to a single material fact" and that the document "improperly intermingle[d] legal conclusions" with the asserted facts.  Warning that it would not permit further amendments, the court gave Monarch five days to revise its filings.

Then the district court struck Monarch's second set of amended filings as well.  As the court explained in its ruling, Monarch failed to fix multiple paragraphs that the court's earlier order pointed out asserted more than one fact.

While Chase's motion for summary judgment was pending, Monarch filed two motions for discovery-related sanctions. Monarch sought case-dispositive sanctions based on Chase's late productions of documents and its redaction and withholding of documents based on allegedly improper assertions of privilege. A magistrate judge denied the first motion on May 1, 2023, and the second on May 11, 2023.

The next day, on May 12, 2023, the district court granted summary judgment for Chase. The court reasoned that qualified privilege precluded defamation liability, and the "single action rule" barred the tortious-interference claim.

In June 2023, Monarch moved for reconsideration and relief from the judgment under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. Monarch also sought to reopen discovery in support of that motion. The court denied both motions.

Monarch timely appealed to this Court.

## II.    SUMMARY JUDGMENT

### A. *Monarch's Statement of Undisputed Material Facts*

First, we consider whether the district court abused its discretion by striking Monarch's statement of undisputed material facts. Monarch had filed that statement of undisputed material facts alongside its motion for partial summary judgment. The district court struck both filings after concluding that Monarch repeat-

edly violated Local Rule 56.1's requirement that statements of material facts "[c]onsist of separately numbered paragraphs, limited as far as practicable to a single material fact." *See* S.D. Fla. R. 56.1(b)(1)(B).

Monarch contends that the district court abused its discretion by allegedly misinterpreting the Southern District of Florida's Local Rule 56.1. In Monarch's view, the district court's ruling prevented it from filing evidence in opposition to Chase's motion for summary judgment. We disagree on both points.

First, the district court's application of Local Rule 56.1 was well within its discretion. "We 'give great deference to a district court's interpretation of its local rules' and review a district court's application of local rules for an abuse of discretion." *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (alteration accepted) (quoting *Clark v. Hous. Auth.*, 971 F.2d 723, 727 (11th Cir. 1992)). To meet this standard, an appellant bears the burden to show that the district court made a "clear error of judgment." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009).

Here, instead, we see a straightforward application of the local rules. Local Rule 56.1 requires "[a]ll Statements of Material Facts (whether filed by the movant or the opponent)" to "[c]onsist of separately numbered paragraphs, limited as far as practicable to a single material fact, with each fact supported by specific, pinpoint references to particular parts of record material." S.D. Fla. R. 56.1(b)(1). The Rule also makes clear that "the Court may strike

the Statement" or "enter other sanctions that the Court deems appropriate" if a litigant doesn't comply. S.D. Fla. R. 56.1(d).

In this case, the district court gave Monarch two bites at the apple. In its February 22, 2023, order striking Monarch's Amended Statement of Undisputed Material Facts, the district court noted that "several of Plaintiffs' asserted facts do not consist of 'separately numbered paragraphs, limited as a far as practicable to a single material fact.'" Doc. 111 at 2 (quoting S.D. Fla. R. 56.1(b)(1)). The order highlighted three paragraphs as examples of this problem. The district court then gave Monarch leave to refile within five days to get in compliance with the local rule, warning that "[n]o additional amendments will be provided."

But when Monarch filed its Second Amended Statement of Undisputed Material Facts, it made no discernible effort to fix the issue. Most glaringly, none of the three paragraphs the district court had identified contained fewer factual assertions this time around. Indeed, one paragraph even continued to label its subsidiary factual assertions as (i), (ii), and (iii). We see no error in concluding that Monarch was out of compliance with the local rule. Certainly, there was no clear error of judgment.[2]

Monarch now contends that the local rule is vague and that the district court required its factual statements to be "narrowed

---

[2] We also observe that many of Monarch's district-court filings contained a great deal of invective and improper innuendo, with inadequate references to competent evidence and appropriate arguments. And at least one filing included unaccepted tracked changes.

more than practicable."  But Monarch adopted the opposite position in district court.  In its motion urging the district court to reconsider its ruling based on "extenuating circumstances," Monarch's counsel took "full responsibility for their errors" and said they "regret and, frankly, are embarrassed" that the statement "still did not sufficiently separate out related facts as was practicable." To boot, Monarch proposed a new statement of material facts that "further broke[] down their statement of facts."  Monarch cannot now take the opposite position on appeal.  *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 809 (11th Cir. 2015).

As for the second part of Monarch's argument, we don't see how striking the statement of undisputed material facts prejudiced Monarch.  Monarch claims that, without a statement of material facts supporting *its* motion for summary judgment, it "could not file . . . opposing evidence" against *Chase's* motion for summary judgment.  Not so.  In fact, Local Rule 56.1 requires that a party opposing summary judgment include "[a]ny additional facts that an opponent contends are material to the motion for summary judgment" at the end of its response to the movant's statement of material facts.  S.D. Fla. R. 56.1(b)(2)(D).

Perhaps Monarch thought it would be convenient to use a single statement across both cross-motions for summary judgment.  But parties who disregard a court's procedural rules do so at their own peril.  *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645,

649 (11th Cir. 1990) ("Practi[ti]oners must adhere to applicable local rules in order for those local rules to have effect and federal courts by enforcement will preserve the integrity of local rules[.]").

But even if we were inclined to find that the district court abused its discretion in striking Monarch's statement of undisputed material facts (we aren't), there's another problem. Monarch never tells us how the evidence in its stricken filing would have justified denying Chase's motion for summary judgment. Monarch doesn't point to a single piece of evidence that the filing cited that would create a genuine issue of material fact precluding summary judgment.

In short, we find no abuse of discretion in the district court's decision to strike Monarch's statement of undisputed material facts.

## B. Monarch's Defamation Claims

Next, we consider the district court's grant of summary judgment to Chase on Monarch's defamation claims. The court based its ruling on the doctrine of qualified privilege.

We review the district court's summary-judgment ruling de novo, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor. *See Athos Overseas Ltd. Corp. v. YouTube, Inc.*, 162 F.4th 1330, 1336 (11th Cir. 2026). We consider only the evidence that was available to the district court at the time of its decision. *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).

Based on that evidence, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). We can affirm the district court's ruling on any ground supported by the record. *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1353 (11th Cir. 2024).

Here, we affirm the district court for two independent reasons. First, Chase's statement was true, which is enough on its own to defeat defamation liability. Second, the district court correctly determined that qualified privilege covered Chase's statements and that Chase didn't make its statements with express malice. So even if we could somehow construe Chase's statement as false, that would not support defamation liability. We discuss each ground in turn.

### 1. Truth or Falsity

Under Florida law, defamation has five elements: "(1) publication; (2) falsity; (3) [the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Because falsity is one of those five elements, a plaintiff cannot make out a claim of defamation without showing "a false statement about another." *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019). Monarch fails to do so.

Monarch produced admissible evidence of one allegedly defamatory statement by Chase: "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." We'll call this the "Cancellation Statement."

On appeal, Monarch repeatedly suggests that we should read the "due to Sanctions" part of the sentence in isolation and deem that phrase false. But under Florida law, when we consider the truth or falsity of an allegedly defamatory statement, "the statement in question must be read in full context of its publication." *Kieffer*, 269 So. 3d at 659.

When we read the statement in full, it's unambiguously true. The term "and/or," although "undeniably clumsy, does have a specific meaning." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 57 (3d ed. 2011). The statement "A and/or B" is true if (1) A is true, (2) B is true, or (3) both A and B are true. *See id.*; *accord* And, *Oxford English Dictionary* (2d ed. 1989) (describing "and/or" as "a formula denoting that the items joined by it can be taken either together or as alternatives"). In other words, "A and/or B" is true unless *both* A and B are false.

Here, the Cancellation Statement asserts that any of three scenarios occurred: Chase canceled the transaction because of (1) sanctions, (2) internal Chase policy, or (3) both. As we just explained, this means the Cancellation Statement is true unless *neither* sanctions *nor* internal Chase policy were the reason it canceled the transaction. But no one disputes that Chase canceled Monarch cus-

12                    Opinion of the Court                    23-14191

tomers' wire transactions due to "Internal JP[Morgan Chase] Policy." Indeed, undisputed facts show that Chase canceled wire transfers to Monarch because it placed Monarch on an internal interdiction list according to Chase's procedures. So the Cancellation Statement is true.

Monarch's counterargument is misguided. Monarch asserts that two of three "options" for the Cancellation Statement's meaning are false. As a result, Monarch urges, the statement as a whole is false. We disagree. Even if only A is ever true, the statement that "A and/or B" applies is still always true.[3]

Because Monarch hasn't identified a false statement, its defamation claims fail as a matter of law.[4] For this reason, we affirm the district court's summary-judgment order.

_____

[3] In fact, Monarch's own use of "and/or" undermines its position. In its response to Chase's statement of material facts, Monarch asserted that Chase "cancelled wire transactions from Monarch [Air Group, LLC,] and/or David Gitman made for personal reasons." But Monarch gave a single example to support that asserted fact: a payment Gitman made toward his home mortgage through his "personal bank." Under the view Monarch now advances, that assertion would border on sanctionable. After all, Monarch's position is that it would be substantially false to assert that Chase canceled payments from Monarch Air Group, LLC, "and/or" Gitman based on a citation to a payment that came only from Gitman.

[4] We take no position on whether a statement like Chase's Cancellation Statement could support liability as defamation by implication. Although Monarch's complaint alleges defamation by implication alongside traditional defamation claims, Monarch doesn't press that claim on appeal. Under defamation by implication, a literally true statement can support liability "if the defendant juxtaposes a series of facts so as to imply a defamatory connection between

## 2. Qualified Privilege

But even if Monarch had been able to show that the Cancellation Statement was "ambiguous and reasonably susceptible of a defamatory meaning" that Monarch was on a formal sanctions list, it would fare no better. *Kieffer*, 269 So. 3d at 659–60 (quoting *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985)). That's because the statement is protected by qualified privilege, as we hold in the alternative.

Under Florida law, a person who publishes a defamatory statement about another isn't liable if (1) the statement is made in circumstances that subject it to qualified privilege and (2) the privilege isn't abused. *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (citing *Restatement (Second) of Torts* § 593 (1976)).

The district court reached the question of qualified privilege by assuming without deciding that the Cancellation Statement was false and defamatory. It reasoned that privilege would defeat liability in any event. In so doing, the court held that Monarch failed

---

them, or creates a defamatory implication by omitting facts . . . even though the particular facts are correct." *Jews For Jesus*, 997 So. 2d at 1108 (citation omitted). Monarch's opening brief doesn't contend that the statements merely created a false impression. Nor does it discuss case law relevant to that theory. Instead, Monarch's opening brief frames Chase's statement only as a "falsehood" that "is never true." And Monarch's reply brief, where Monarch gestures towards defamation by implication, is too late to raise the issue. *See Sapuppo v. Allstate Fla. Ins.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

14                    Opinion of the Court                    23-14191

to create a genuine dispute about whether Chase made the Cancellation Statement with express malice.

We agree with those conclusions. But as we explain, we arrive at the same conclusion about express malice by way of a different path.

### a.   The Cancellation Statement is qualifiedly privileged.

The district court held that the undisputed facts showed that Chase's statements were subject to qualified privilege. The court applied a five-element test for qualified privilege. That test requires "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion, and (5) publication in a proper manner." *Am. Ideal Mgmt., Inc. v. Dale Vill., Inc.*, 567 So. 2d 497, 499 (Fla. 4th DCA 1990); *accord Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000).[5] We agree that the court applied the correct test.

Because the "good faith" element is most sensibly analyzed last,[6] we start with Chase's and its customers' corresponding interests. As the district court correctly found, Chase has an interest in

_____

[5] Florida appellate courts vary between a four- and five-element test for qualified privilege. *See Block v. Matesic*, 789 F. Supp. 3d 1131, 1183 (S.D. Fla. 2025). We need not interrogate the difference. We apply the test from the Fourth District Court of Appeal, which has jurisdiction over the county Monarch filed suit in. *See Bravo v. United States*, 532 F.3d 1154, 1164 (11th Cir. 2008).

[6] As other courts have remarked, the "good faith" element is "paradoxical." *See Block*, 789 F. Supp. 3d at 1184 (collecting decisions). It appears to show up

23-14191                Opinion of the Court                15

informing its customers why it had canceled their transactions. Chase's customers also had a corresponding interest in learning the reason Chase didn't process their attempted transactions.

Monarch's counterarguments misunderstand these elements. Monarch posits that its customers had an interest in paying for their flights with Monarch, while Chase had an interest in not completing the transactions because Monarch was on its interdiction list.

Whether or not they're true, though, those asserted facts are immaterial. Qualified privilege looks to the subject matter of the *communication*. *See Nodar*, 462 So. 2d at 809 n.4 (quoting *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906)). And Monarch hasn't called into question the obvious interest that Chase and its customers had in an explanation of why Chase canceled an attempted transaction—or at least notification that it wasn't accidental. Indeed, the summary-judgment record has evidence that Chase customers inquired about why Chase canceled their transactions.

---

three times in the qualified-privilege analysis. To start, good faith is one of five elements to show qualified privilege. *Am. Ideal*, 567 So. 2d at 499. Then, Florida courts hold that a statement becomes "cloaked with a legal presumption of good faith" only *after* showing that it's qualifiedly privileged. *Thomas*, 761 So. 2d at 405. Finally, the Florida Supreme Court suggests that showing express malice, as necessary to defeat qualified privilege, is essentially the same thing as rebutting the presumption of good faith. *See Nodar*, 462 So. 2d at 810.

Monarch similarly confuses the inquiry when it asserts that Chase customers don't have an interest in hearing false information. Qualified privilege causes otherwise defamatory statements not to be actionable. And as we mentioned, falsity is an element of defamation under Florida law. *Jews For Jesus*, 997 So. 2d at 1106. But Monarch's attempt to conflate the falsity and interest inquiries would mean that no prima facie defamatory statement could ever be subject to qualified privilege. In other words, Monarch's approach would read qualified privilege out of existence. So we must reject Monarch's argument.

We turn next to the fourth and fifth elements: a proper occasion and publication in a proper manner. The district court found that Chase made its statements on a proper occasion because the bank made them only after canceling a customer's transaction, and the message explained why Chase canceled that transaction. The court also concluded that the messages were published in a proper manner because Chase sent them by private message, only to the affected Chase accountholders, and didn't mention Monarch Air Group, LLC, or Gitman by name.

Monarch cites six categories of evidence it claims would allow a reasonable juror to find for Monarch on the proper-occasion and manner elements. But none of the evidence it cites was part of the summary-judgment record. So that evidence can't justify reversal. *See Holloman*, 443 F.3d at 836.[7]

---

[7] Monarch also recycles its arguments about the alleged falsity of Chase's statements under the proper-occasion and proper-manner elements. But as we've

23-14191            Opinion of the Court                    17

Finally, we circle back to the first element: good faith. The district court found that Chase established the element in two ways: first, based on a presumption of good faith created by meeting the other four elements and, second, by an inference because Chase made the statements according to its standard operating processes.

We see no reason to disturb either conclusion. Monarch's argument against the presumption relies on undermining the district court's conclusion on one or more of the other four elements. But as we've explained, Monarch has failed to do so.

Monarch also attacks the district court's conclusion that Chase made the Cancellation Statement according to standard operating processes. Once again, this argument is too little, too late.

The district court based its conclusion on the substantiated, uncontroverted fact that Chase made the Cancellation Statement "pursuant to Chase standard operating processes." Chase substantiated that fact with testimony about its general guidelines for communicating with customers about sanctions. Those guidelines also address how to communicate about transactions canceled because of Chase's internal policies.

On appeal, Monarch complains about Chase's evidentiary support for its assertion that it made the Cancellation Statement

---

explained, a statement's falsity doesn't factor into the qualified-privilege analysis.

"pursuant to Chase standard operating processes."[8]  But Monarch didn't raise this issue at summary judgment.  Monarch didn't assert that the Cancellation Statement *wasn't* based on standard Chase operating processes.  And Monarch didn't argue then that Chase failed to substantiate this asserted fact, either.  *See* Fed. R. Civ. P. 56(c).  So Monarch has forfeited this issue on appeal.

### b.  *Monarch hasn't shown express malice.*

But qualified privilege isn't the end of the story.  Under Florida law, a defamation plaintiff can overcome qualified privilege with a showing of "express malice."  *Nodar*, 462 So. 2d at 806.  Express malice "is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff."  *Id.* A plaintiff may meet his burden in one of two ways:  "This malice may be inferred from the language itself, or may be proven by extrinsic circumstances."  *Id.* at 810 (quoting *Coogler v. Rhodes*, 21 So. 109, 112 (Fla. 1897)).

Monarch contends that it created at least a genuine dispute of material fact through both paths.  But it fails on both.

---

[8] Monarch argues that Chase's summary-judgment filings didn't support that fact with a citation to a particular policy document, the "Global Funds Processor" procedure document from Chase's Sanctions Service Utility Department. And Monarch now asserts that Chase's decision to place Monarch on its interdiction list and make the Cancellation Statement didn't comport with a different internal policy, the J.P. Morgan Payments GFCC AML Interdiction List Procedure.

23-14191                Opinion of the Court                19

First, Monarch writes that Chase's statement "uses the most extreme criminal language imaginable."[9]  In other words, Monarch seems to argue that any statement "referring to OFAC investigation and sanctions" is extreme enough to allow us to infer express malice because those terms "only apply to the world's worst criminals."

This theory is factually and legally insufficient.  Factually, Monarch provides no evidence that references to OFAC (the Office of Foreign Assets Control) and sanctions apply only to "the world's worst criminals."  Legally, none of the cases it cites inferred express malice from a statement nearly as vague and benign as "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." *Cf. Brown v. Fawcett Publ'ns, Inc.*, 196 So. 2d 465, 465 (Fla. 2d DCA 1967) (discussing an article that vividly portrayed the plaintiff "as a lecher, a sodomist, a rapist, a 'Peeping Tom', a murderer and a generally animalistic brute"); *Loeb v. Geronemus*, 66 So. 2d 241, 243 (Fla. 1953) (inferring express malice from statements that the plaintiff was "a man of low moral character" and a "bad actor" whose "evil conduct" and "scandalous activities" were a "bad example for our children").

---

[9] Monarch made this *argument* for the first time on appeal. Still, it raised the *issue* of whether Chase exhibited express malice before the district court, so we will consider the argument. *See In re Home Depot Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019) ("[T]here is a difference between raising new issues and making new arguments on appeal.").

20                    Opinion of the Court                    23-14191

Second, Monarch argues that it showed that Chase made the statement while knowing it was false and that this creates a jury question as to express malice.  This argument fails right out of the starting gate: Monarch doesn't identify any evidence of knowing falsity in the summary-judgment record.[10]

Monarch claims, without citation, that it "presented ample evidence that Chase knew that its Sanctions Statement was false when it was made."  But we searched Monarch's appellate brief in vain for a single citation to such evidence in the summary-judgment record.  "Neither the district court nor this court has an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention."  *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1209 n.11 (11th Cir. 2006); *see also* Fed. R. App. P. 28(a)(8)A).

And even sifting through Monarch's district court filings, we don't see record evidence that anyone involved in making the Cancellation Statement believed the statement was false.  *Cf.* S.D. Fla. R. 56.1(b)(2)(D) (requiring "[a]ny additional facts that an opponent contends are material to the motion for summary judgment" to be "numbered and placed immediately after the opponent's response to the movant's Statement of Material Facts").

---

[10] Because Monarch fails to provide enough evidence, in any event, we don't address the validity of its legal theory.  So we take no position on whether evidence of knowing falsity is ever enough to allow the factfinder to infer that a speaker's "primary motive" was to injure the plaintiff.  *Nodar*, 462 So. 2d at 806.

In fact, our review of the record found only evidence showing the opposite of what Monarch claims. Chase's corporate representative repeatedly stated the company's belief that the Cancellation Statement was true. For example, as a corporate representative, Chase's compliance risk management director explained that "the fact that Monarch was added to the AML interdiction list and the fact that the AML interdiction list is a subset of the global sanctions operation processes [is] why [the Cancellation Statement] would be a true statement." Doc. 91-1 (Lauro Dep.) at 160:2–8.

In sum, Monarch doesn't provide any evidence to support its "knowing falsity" theory of express malice. So it can't overcome Chase's qualified privilege. Accordingly, we hold that Chase's entitlement to qualified privilege is an alternative basis to affirm the district court's grant of summary judgment.

### III.    RULE 60(b) MOTION

Finally, Monarch appeals the district court's denial of relief from the judgment under Rule 60(b)(3) of the Federal Rules of Civil Procedure.[11]

We review Rule 60(b) rulings for abuse of discretion. *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012). "That review 'is narrow in scope, addressing only the propriety of the de-

---

[11] Monarch's post-judgment motion also sought relief under Rules 59(e) and 60(b)(2), but Monarch doesn't appeal on those grounds.

22                    Opinion of the Court                    23-14191

nial or grant of relief'" rather than "'issues in the underlying judg-ment.'" *Id.* (quoting *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins.*, 198 F.3d 1332, 1338 (11th Cir. 1999)).  Successfully appealing a Rule 60(b) ruling is no easy feat.  To prevail, a litigant "must do more than show that a grant of [the] motion might have been war-ranted"; he "must demonstrate a justification for relief so compel-ling that the district court was *required* to grant [the] motion." *Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996).

In the district court, a party moving under Rule 60(b)(3) must show two things.  First, it must "prove by clear and convinc-ing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).  Second, the movant must also "demonstrate that the conduct prevented [hi]m from fully presenting his case." *Id.*

In the district court, Monarch argued that Chase engaged in discovery "misconduct" by producing certain documents after the end of discovery and purportedly lying when it told the court it withheld or redacted certain documents based on privilege.  Mon-arch also posited it couldn't fully and fairly respond to Chase's mo-tion for summary judgment because of Chase's conduct in discov-ery.[12]

---

[12] At times on appeal, Monarch suggests that its real complaint is with the magistrate judge's decision not to impose case-dispositive sanctions against Chase for the same alleged misconduct.  To the extent that Monarch seeks to use a Rule 60(b) motion to "resurrect pre-trial discovery grievances," that's a

The district court denied Monarch's motion.  It rejected Monarch's speculation that Chase "lied" in making a privilege claim.  And it held that the fact that Chase could have been more diligent in discovery did not clearly and convincingly "r[i]se to the level of fraud, misrepresentation, or other misconduct" warranting relief.  Separately, the court held that Monarch failed to show that discovery misconduct, rather than its own litigation decisions, prevented it from fully presenting its case.

We see no abuse of discretion.  At a minimum, Monarch failed to show that it couldn't fully present its case because of Chase's conduct.  That was reason enough to deny Monarch's motion. *See Waddell*, 329 F.3d at 1309.  All the alleged misconduct occurred before the court entered summary judgment.  Yet Monarch made no attempt to seek more time for its summary-judgment briefing, to supplement its filings, or to stay the court's ruling pending resolution of the discovery issues.  Even now, Monarch fails to

---

misuse of the rule. *Scutieri v. Paige*, 808 F.2d 785, 795 (11th Cir. 1987); *see also Cavaliere v. Allstate Ins.*, 996 F.2d 1111, 1115 (11th Cir. 1993) ("[T]he well-recognized rule . . . precludes the use of a Rule 60(b) motion as a substitute for a proper and timely appeal." (quoting *Burnside v. E. Airlines, Inc.*, 519 F.2d 1127, 1128 (5th Cir. 1975))).  Arguably, Monarch asks us to directly review the magistrate judge's rulings.  But Monarch didn't timely file objections about these rulings to the district court, so we will not review them. *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980); *see also* Fed. R. Civ. P. 72(a).  Monarch offers no authority suggesting that the district court's entry of judgment somehow excuses its obligation to timely object.  In fact, the case law it cites shows we cannot review the magistrate judge's decisions directly. *See Egan v. Freedom Bank*, 659 F.3d 639, 644 (7th Cir. 2011).

explain how any of the late-produced evidence would have prevented the court from granting summary judgment to Chase.

We've affirmed Rule 60(b) rulings on similar bases before. A district court does not abuse its discretion by denying Rule 60(b) relief where the moving party "did not properly request the court for additional time to procure . . . testimony" despite having the opportunity to do so before judgment. *Scutieri v. Paige*, 808 F.2d 785, 795 (11th Cir. 1987). "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *Maradiaga*, 679 F.3d at 1291 (quoting *Federal's Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977)). And that's especially so when, as here, the litigant fails to show how more time would have changed the outcome.

## IV.   CONCLUSION

For the reasons we've stated, we affirm the district court's rulings in full.

**AFFIRMED.**